Gordon J. GRUBE and Julie Grube, Plaintiffs-
Appellants,†

v.

John L. DAUN, Louis Achter and Secura Insurance,
Defendants-Respondents.

Supreme Court

*No. 95–2353. Oral argument April 9, 1997.—Decided June 13,
1997.*

(Also reported in 563 N.W.2d 523.)

†Motion for reconsideration denied November 12, 1997.
See Per Curiam opinion, issued November 12, 1997, pub-
lished 213 Wis. 2d 533.

For the plaintiffs-appellants there were briefs by *Robert W. Lutz, Gary Jahn* and *Lutz, Burnett, McDermott, Jahn & King,* Chilton and oral argument by *Robert W. Lutz.*

For the defendant-respondent, John L. Daun, there was a brief by *William F. Fale* and *Fale, Fale & Hemsing Law Offices,* Sheboygan and oral argument by *William F. Fale.*

For the defendant-respondent, Louis Achter, there was a brief by *Michael S. Siddall, Richard T. Elrod and Herrling, Clark, Hartzheim & Siddall, Ltd.,* Appleton and oral argument by *Michael S. Siddall.*

For the defendant-respondent, Secura Insurance Company, there was a brief by *Ronald G. Pezze, Jr.* And *Peterson, Johnson & Murray, S.C.,* Milwaukee and oral argument by *Ronald G. Pezze, Jr.*

Amicus curiae brief was filed by *John M. Van Lieshout, Colleen D. Ball,* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.,* Milwaukee for the Firstar Corporation.

Amicus curiae was filed by *Susan R. Tyndall* and *Hinshaw & Culbertson,* Milwaukee for the Civil Trial counsel of Wisconsin.

Amicus curiae brief was filed by *Lawrence E. Classen*, Madison for the Wisconsin's Environmental Decade, Inc.

¶ 1. JON P. WILCOX, J. This case is on certification from the court of appeals following a jury trial in the Circuit Court for Calumet County, Eugene F. McEssey, Reserve Judge. Gordon and Julie Grube brought suit against the defendants, John Daun, Louis Achter, and Secura Insurance, for misrepresentation and negligence. The circuit court did not allow the Grubes to introduce evidence regarding Achter's alleged violation of Wis. Stat. § 144.76. The jury found that the defendants were not negligent, but did not consider the misrepresentation claims. We affirm the judgment of the circuit court.

¶ 2. We accepted two issues from the court of appeals on certification: (1) whether Subchapter IV of Chapter 144 of the Wisconsin Statutes creates a private cause of action for individuals who suffer damages from hazardous substance discharges, and (2) whether Wis. Stat. § 144.76 is a safety statute, violation of which is negligence *per se*.[1] We hold that Subchapter IV of Chapter 144 does not create a private right of action and that Wis. Stat. § 144.76 is not a safety statute.

---

[1] As the court of appeals stated in its request for certification, while additional issues were raised on appeal, those issues are controlled by our determination of the two certified issues. At oral argument, the parties focused on the two certified issues and a third issue concerning the effect of an "as is" clause in the offer to purchase. Due to our holding on the two certified issues, we do not consider what effect the "as is" clause has under these circumstances.

¶ 3. The relevant facts are not in dispute. In 1974, Louis Achter bought a farm in Calumet County from his father. While either Achter or his father owned the property, an underground storage tank was installed to store gasoline for the farm. In 1978, Achter noticed that the underground storage tank was leaking. He had the remaining gasoline pumped out and did not use the tank again. Achter did not notify the Department of Natural Resources (DNR) of the leak.

¶ 4. In 1984, Achter sold his farm to John Daun. Daun subdivided the land to create a parcel that consisted of a farmhouse, outbuildings and three acres. Daun then offered the parcel with the farmhouse for sale. This land, which included the underground storage tank, was purchased by Gordon and Julie Grube.

¶ 5. About three years after moving onto the property, the Grubes became aware of gasoline contamination while working on a well. They reported the contamination to the DNR and were informed that, as the current owners of the property, they were responsible for taking remedial action.

¶ 6. In December of 1988, the Grubes filed suit against Daun, and later added Achter and his insurance carrier, Secura, as additional defendants. The Grubes alleged negligent misrepresentation, breach of warranties, negligence by Achter in allowing the leak, negligence by Achter in failing to inform anyone of the leak, breach by Achter of his duty to keep the land environmentally safe for others, and strict liability for Achter's abnormally dangerous actions. Daun filed a cross-claim against Achter. Achter filed a third-party complaint against Secura demanding that he be provided with both a defense and insurance coverage under his farmowners policy. The defendants filed motions for summary judgment, and the circuit court

dismissed a number of the Grubes' claims. The Grubes appealed that decision, and the court of appeals reversed in part the decision of the circuit court, reinstating some of the Grubes' claims. *See Grube v. Daun*, 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992). A petition for review was denied by this court.

¶ 7.   The case was tried to a jury in March of 1995. The Grubes sought to introduce evidence concerning the Achter's alleged violation of Wis. Stat. §§ 144.76(2) and (3) (1993–94).[2] Those sections provided in relevant part:

> **(2)**  NOTICE OF DISCHARGE. (a) A person who possesses or controls a hazardous substance or who causes the discharge of a hazardous substance shall notify the department[3] immediately of any discharge not exempted under sub. (9).
>
> (b)  Notification received under this section or information obtained in a notification received under this section may not be used against the person making such a notification in any criminal proceedings.
>
> (c)  The department shall designate a 24-hour statewide toll free or collect telephone number whereby notice of any hazardous discharge may be made. . . .
>
> **(3)**  RESPONSIBILITY. A person who possesses or controls a hazardous substance which is discharged or who causes the discharge of a hazardous substance shall take the actions necessary to restore the environment to the extent practicable and minimize the

---

[2] Unless otherwise indicated, all future statutory references are to the 1993–94 volume.

[3] The department as used in this section refers to the Department of Natural Resources. Wis. Stat. § 144.01(2).

harmful effects from the discharge to the air, lands or waters of this state.[4]

The Grubes asked the circuit court to hold that § 144.76 was a safety statute and that Achter's alleged violation of the statute constituted negligence as a matter of law. The circuit court held that the Grubes could not use § 144.76 as a standard of care and prohibited the Grubes from questioning witnesses about § 144.76. The court also refused to instruct the jury as to Achter's alleged violation of the statute and refused to give a special verdict question on Achter's violation. The jury found that the defendants were not negligent.

¶ 8. Although the Grubes have been identified by the DNR as a potentially responsible party, they have not yet been required to remediate the property or to incur any expenses. In addition, Achter has been notified in a letter from the DNR that he is responsible for remediation. The letter further requested that Achter retain an environmental consultant to conduct an investigation.

## I.

■■

¶ 9. The first issue we consider is whether Subchapter IV of Chapter 144 creates a private cause of action for individuals who suffer damages from hazardous substance spills. Our resolution of this issue is dependent on our interpretation of Chapter 144. Issues involving statutory interpretation are questions of law that this court reviews *de novo*. *Wagner Mobil, Inc. v. City of Madison*, 190 Wis. 2d 585, 591–92, 527 N.W.2d 301 (1995); *Braatz v. LIRC*, 174 Wis. 2d 286, 293, 496

---

[4] Chapter 144 has been recodified, effective January 1, 1997. *See* 1995 Wis. Act 227, § 1047.

N.W.2d 597 (1993). Accordingly, we owe no deference to the decision of the circuit court. *Colby v. Columbia County*, 202 Wis. 2d 342, 349, 550 N.W.2d 124 (1996).

¶ 10. The respondents assert that the language of Wis. Stat. § 144.76 and the structure of Chapter 144 lack the legislative intent necessary to create a private right of action. They contend that the court of appeals' case of *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 476 N.W.2d 593 (Ct. App. 1991), supports their position. The Grubes maintain that *Fortier* is not relevant to our determination because that case concerned different sections of Chapter 144 than those at issue here. The Grubes further argue that Subchapter IV implicitly creates a private right of action.

¶ 11. We first consider whether the court of appeals' decision in *Fortier* is applicable to our decision. In *Fortier*, the court of appeals concluded that Wis. Stat. §§ 144.43 and 144.44 did not create a private right of action. Pursuant to these sections of Chapter 144, the DNR had adopted an administrative rule regulating the disposal of hazardous waste at landfills. The defendants violated that disposal rule by disposing of hazardous waste at an unlicensed landfill. The court held that the statutes in question did not create a private right of action because they did not contain an expression of legislative intention to do so: "We infer from these provisions that the legislature intended that the violation of the DNR's solid waste disposal regulations is a public rather than a private wrong." *Fortier*, 164 Wis. 2d at 661. Although the court of appeals' holding is pertinent to this case, as it dealt with different sections of Chapter 144 we must independently determine whether Subchapter IV of Chapter 144 creates a private right of action.

¶ 12. A determination of whether a statute creates a private right of action is dependent on whether there is a clear indication of the legislature's intent to create such a right. *Kranzush*, 103 Wis. 2d at 79–80 ("the touchstone in the determination of [whether a private right of action is created] is the presence of an expression of legislative intent specifically to create such a right . . ."); *McNeill*, 55 Wis. 2d at 258. In *McNeill* we stated:

> The legislative intent to grant or withhold a private right of action for the violation of a statute, or the failure to perform a statutory duty, is determined primarily from the form or language of the statute. The nature of the evil sought to be remedied, and the purpose it was intended to accomplish, may also be taken into consideration. In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability.

*Id.* at 258–59 (citation omitted); *see also Kranzush*, 103 Wis. 2d at 74–75. Accordingly, a private right of action is only created when (1) the language or the form of the statute evinces the legislature's intent to create a private right of action, and (2) the statute establishes private civil liability rather than merely providing for protection of the public. The language and form of Chapter 144 do not suggest that the legislature intended to create a private right of action, but instead illustrate that this chapter was designed to provide general protection to the public.

¶ 13. The hazardous substance spill at issue in this case is governed by Subchapter IV of Chapter 144

which is entitled "*Solid Waste, Hazardous Waste and Refuse.*" Wis. Stat. § 144.76 is part of the hazardous waste provisions of Subchapter IV. Thus, we begin our search for legislative intent by examining the declaration of policy for hazardous waste management contained in Wis. Stat. § 144.60(2):

> **(2)** DECLARATION OF POLICY. The legislature finds that hazardous wastes, when mismanaged, pose a substantial danger to the environment and public health and safety. To ensure that hazardous wastes are properly managed within this state, the legislature declares that a state-administered regulatory program is needed. . .

It is indeed rare to find such a clear expression of the legislature's intent. This section unequivocally illustrates that the intent of the hazardous waste management provisions was to protect the public in general. Additional evidence of this intent is found in Wis. Stat. § 144.62 which establishes the powers and duties of the department. Wis. Stat. § 144.62(3) provides:

> **(3)** The department may, by rule, prohibit particular methods of treatment or disposal of particular hazardous wastes, upon a finding that restrictions on treatment or disposal methods are necessary to protect public health and safety or the environment.

¶ 14. The absence of a legislative intention to create a private right of action is also illustrated by provisions providing for enforcement by the state. For example, Wis. Stat. § 144.98 (1987–88) provided:

> **144.98 Enforcement; duty of department of justice; expenses.** The attorney general shall enforce this chapter and all rules, special orders,

licenses, plan approvals and permits of the department. . . .For purposes of this proceeding where this chapter or the rule, special order, license, plan approval or permit prohibits in whole or in part any pollution, a violation is deemed a public nuisance. . . .

In addition, Wis. Stat. § 144.442(9)(d) and (f) empower the state to seek reimbursement from responsible persons for the cost of environmental remediation. Wis. Stat. § 144.76 makes provision for the state to perform remediation and seek contribution from a responsible person, § 144.76(7)(a) and (b), or pursuant to § 144.76(7)(c) the state may force a responsible person to fulfill their duty under § 144.76(3). Section 144.76(7)(c) provides in relevant part:

> (c) The department, for the protection of public health, safety or welfare, may issue an emergency order or a special order to the person possessing, controlling or responsible for the discharge of hazardous substances to fulfill the duty imposed by sub. (3).

Such clear provisions for state action without corresponding provisions for private action are strong evidence of the absence of legislative intent to create a private right of action.[5]

---

[5] This court came to a similar conclusion concerning the intent of Wis. Stat. § 144.76(3) in *State v. Mauthe*, 123 Wis. 2d 288, 366 N.W.2d 871 (1985). In considering whether the legislature intended an owner of property containing contaminated soil to take remedial action, this court stated:

Aldo Leopold, the great Wisconsin conservationist in his well-known work, *A Sand County Almanac*, (1948) at page 203 said:

¶ 15.   In light of the overwhelming evidence that Subchapter IV of Chapter 144 was designed to provide general protection to the public, the explicit provisions providing for enforcement of Chapter 144 by the state, and the absence of any indication that the legislature intended to create a private right of action, we find that Subchapter IV of Chapter 144 does not create a private right of action.

## II.

¶ 16.   We next consider whether Wis. Stat. § 144.76 is a safety statute, the violation of which is negligence *per se*. The Grubes maintain that Chapter 144 establishes a standard of care for the protection of the environment and is intended to protect Wisconsin residents from the dangers of environmental contamination. The respondents contend that the statutory language does not indicate that the legislature intended § 144.76 to be a safety statute.

¶ 17.   Resolution of this issue is based on the interpretation of a statute which is a question of law that we review *de novo*. *Wagner*, 190 Wis. at 591–92; *Braatz*, 174 Wis. 2d at 293. Accordingly, we do not owe any deference to the decision of the circuit court. *Colby*, 202 Wis. 2d at 349. A statute should not be construed as changing the common law unless the intent to cause

---

"Individual thinkers since the days of Ezekiel and Isaiah have asserted that the despoliation of land is not only inexpedient but wrong."

The statutes under consideration are a legislative recognition that the discharge of hazardous substances is one form of despoliation. The legislature has enacted this law to correct that wrong.

*Id.* at 303.

such a change is clearly expressed in the statute. *Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis. 2d 56, 74, 307 N.W.2d 256 (1981).

¶ 18. Accordingly, we must first determine whether Wis. Stat. § 144.76(3) is a safety statute. Safety statutes are those legislative enactments that are designed to protect a certain class of persons from a particular type of harm. *Bennett v. Larsen Co.*, 118 Wis. 2d 681, 693–94, 348 N.W.2d 540 (1984); *Walker v. Bignell*, 100 Wis. 2d 256, 268, 301 N.W.2d 447 (1981). A statute is not a safety statute if the legislature merely intended to protect the general public. *See In re Estate of Drab*, 143 Wis. 2d 568, 570, 422 N.W.2d 144 (Ct. App. 1988).

¶ 19. Wis. Stat. § 144.76(3) provides that a person who possesses a hazardous substance that is spilled "shall take actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge to the air, lands, or waters of this state." In addition, the declaration of policy for hazardous waste management, found in Wis. Stat. § 144.60(2), provides in relevant part: "The legislature finds that hazardous wastes, when mismanaged, pose a substantial danger to the environment and public health and safety." From this language, it appears that the statute was designed to protect the public in general rather than a certain class of persons. Therefore, we conclude that Wis. Stat. § 144.76(3) is not a safety statute.

*By the Court.*—The judgment of the circuit court is affirmed.