Gordon J. GRUBE and Julie Grube, Plaintiffs-Appellants,

v.

John L. DAUN, Louis Achter and Secura Insurance, Defendants-Respondents.

Supreme Court

*No. 95–2353. Filed November 12, 1997.*

(Also reported in 570 N.W.2d 851.)

¶ 1. PER CURIAM. This case is again before the court in response to the plaintiffs' motion for reconsideration of our decision in *Grube v. Daun*, 210 Wis. 2d 682, 563 N.W.2d 523 (1997). In that opinion, upon certification from the court of appeals, this court affirmed the decision of the circuit court[1] and rejected the plaintiffs' contentions that a private right of action existed

---

[1] Circuit Court for Calumet County, Eugene F. McEssey, Judge.

under subchapter IV of Wis. Stat. ch. 144 (1993–94).[2] We similarly rejected the plaintiffs' claims that violation of Wis. Stat. § 144.76, a nonsafety statute, constituted negligence per se.

¶ 2. The plaintiffs' motion for reconsideration does not ask this court to revisit the two issues previously resolved. Instead, the plaintiffs ask this court to resolve eight additional issues raised before the court of appeals. Since the plaintiffs' motion for reconsideration does not challenge our resolution of the two certified issues, we deny the motion for reconsideration. However, because the additional eight issues raised by the plaintiffs in the court of appeals were not controlled by our decision on the two certified issues, we determine that the plaintiffs are entitled to appellate review of those eight additional issues. Accordingly, we deny the motion for reconsideration and address the additional issues. Upon review, we affirm the circuit court's disposition of these matters.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3. This dispute arises from the sale of a parcel of land contaminated by a leaking underground storage tank (UST). Defendant Louis Achter (Achter), who had lived on his family's farm in Calumet County all of his life, purchased the farm from his mother in 1974. To facilitate farm operations, Achter, at some point in the early 1970s, had installed an underground tank to store gasoline for use by farm machinery. In 1978, after refilling the UST and noticing a decreasing gas level, Achter discovered that gasoline was leaking from the tank. Achter then had the remaining gasoline pumped

---

[2] Unless otherwise indicated, all future statutory references are to the 1993–94 volume.

out of the tank and placed in a new above-ground tank. The old tank remained buried. Achter continued to live on the property after the leak. His family and livestock also subsequently relied on drinking water from one of several wells situated on the property.

¶ 4. Defendant John Daun (Daun), also a farmer, purchased the 124-acre farm "as is" from Achter in early 1985. Daun then subdivided the land to create a "farmette." He offered the small parcel containing the farm buildings, three wells and the UST for sale. Plaintiffs Julie and Gordon Grube purchased the parcel, also on an "as is" basis, from Daun in December 1985, with the expressed intention of making extensive renovations.

¶ 5. Three years later, in the course of properly abandoning what was previously thought to be a dry well, the Grubes discovered groundwater gasoline contamination. The Grubes reported the contamination to the Wisconsin Department of Natural Resources (DNR) on the advice of counsel. The DNR investigated the contamination and then responded by notifying the Grubes on October 3, 1988, and, later, defendant Achter, of their potential responsibility for the remediation costs of cleaning up the gasoline contamination.

¶ 6. The Grubes filed suit against Daun on December 16, 1988. Daun responded by filing a third-party complaint against Achter. The Grubes then amended their complaint several times to include Achter and his insurance company, Secura Insurance (Secura), as defendants and to ask, in the alternative, that their purchase agreement with Daun be rescinded due to mutual mistake in the formation of the contract. The Grubes alleged negligent misrepresentation, intentional misrepresentation, strict responsibility for

misrepresentation, breach of warranty, negligence by Achter in allowing the leak, negligence by Achter for not reporting the leak to the DNR, breach of Achter's duty to keep the land safe, violation of Wis. Stat. § 100.18 which prohibits fraudulent misrepresentations, and strict liability for conducting an abnormally dangerous activity.[3]

¶ 7. Daun cross-claimed against Achter, while Achter filed a third-party complaint against Secura demanding that Secura provide him with a defense and cover any judgments against him. The defendants also filed motions for summary judgment, which the circuit court granted in part, thereby dismissing many of the plaintiffs' claims. The plaintiffs appealed the circuit court's orders. The court of appeals reinstated some of the Grubes' claims. *See Grube v. Daun,* 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992). The circuit court then dismissed the plaintiffs' claims for strict liability at a pretrial motion hearing in February 1995. Responding to further objections, the circuit court dismissed the Grubes' claims for rescission on the first day of trial on the grounds that the Grubes had waived that form of relief by affirming the contract. Finally, at a pre-verdict conference, the circuit court dismissed the misrepresentation claims due to a stipulation of counsel.

¶ 8. Ultimately, the jury only considered claims based on the negligence of Achter and Thiel. Because the plaintiffs' remaining misrepresentation claims against Daun were dependent on agency principles, the parties agreed to determine Daun's vicarious liability through post-verdict motions if Thiel were found negligent.

---

[3] In a separate lawsuit, the Grubes sued Daun's real estate agent, Jerry Thiel. The actions were later consolidated.

¶ 9. The negligence claims were tried to the jury and the jury found Achter and Thiel not negligent. The jury also found that the Grubes were negligent in their purchase of the property. Post-verdict motions for relief were denied, with the circuit court expressly affirming the jury's verdict. The Grubes appealed the circuit court proceedings on ten grounds.

¶ 10. The court of appeals certified the private right of action and negligence per se questions to this court. *See Grube v. Daun*, 210 Wis. 2d 682 (1997). The court of appeals also noted in its certification to this court that all additional issues raised on appeal would be controlled by our resolution of the two certified questions. While this court accepted the appeal on all matters before the court of appeals, and the plaintiffs relied on and supplemented their briefs before the court of appeals, our previous opinion addressed only the two certified questions.

## II. MOTION FOR RECONSIDERATION

¶ 11. The plaintiffs do not seek reconsideration of the two issues resolved by this court in *Grube v. Daun*, 210 Wis. 2d 682, 563 N.W.2d 523 (1997). Rather, the plaintiffs point to this court's acceptance of certification to hear all issues raised before the court of appeals. The plaintiffs also assert that the court of appeals' statement that the remaining eight appellate issues would be controlled by our decision on the certified issues was in error.

¶ 12. This court will change a decision on reconsideration "only when the court has overlooked controlling legal precedent or important policy considerations or has overlooked or misconstrued a controlling or significant fact appearing in the record." Wisconsin Supreme Court Operating Procedures, II J.

Since the plaintiffs do not challenge this court's resolution of the two issues disposed of in our earlier decision, reconsideration is not an appropriate remedy.

¶ 13. However, we determine that our reliance on the court of appeals' certification, stating that all other issues would be controlled by the two certified issues, was misplaced. The additional eight issues raised by the plaintiffs in the court of appeals were not controlled by our prior decision. We further determine that footnote 1 in *Grube v. Daun*, 210 Wis. 2d 682, 685 n. 1, 563 N.W.2d 523 (1997) should be withdrawn[4] and that the plaintiffs are entitled to appellate review of those eight additional issues. Accordingly, we respond now to the plaintiffs' initial appeal on these issues.

## III. EVIDENCE OF COMMON LAW NEGLIGENCE

¶ 14. The plaintiffs' most vigorous challenge on appeal attacks the circuit court's repeated refusal to allow evidence of Achter's violation of Wis. Stat. § 144.76[5] to be admitted as evidence of a standard of care for common law negligence purposes. Evidentiary questions are properly resolved at the circuit court's

---

[4] In footnote 1 of *Grube v. Daun*, 210 Wis. 2d 682, we expressly declined to address the remaining issues based on the assertion that those issues were controlled by our resolution of the certified questions.

[5] Wis. Stat § 144.76(2) states in pertinent part:

NOTICE OF DISCHARGE. (a) A person who possesses or controls a hazardous substance or who causes the discharge of a hazardous substance shall notify the department immediately of any discharge not exempted under sub. (9).

(b) Notification received under this section or information obtained in a notification received under this section may not be used against the person making such a notification in any criminal proceedings.

discretion. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). Where this court is asked to review such rulings, we look not to see if we agree with the circuit court's determination, but rather whether "the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *State v. Pharr*, 115 Wis. 2d at 342 (quoting *State v. Wollman*, 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979)). If a reasonable basis for the circuit court's ruling exists, we will not disturb it. *See State v. Harris*, 123 Wis. 2d 231, 365 N.W.2d 922 (Ct. App. 1985). Our review of the trial record indicates that the circuit court properly exercised its discretion.

¶ 15. At trial, plaintiffs' counsel repeatedly insisted that it was the plaintiffs' "right" to enter evidence of Achter's violation of Wis. Stat. § 144.76 to show a standard of care for common law negligence since the statute was "the law of the land." However, absent a safety statute or an established private right of action, this court has never held that parties have an absolute right to admit evidence of violation of a civil statute to show a standard of care. Even were this court inclined to adopt the plaintiffs' position that a violation of a civil statute can be generally admitted for such purposes, a question we decline to address on this appeal, the circuit court's discretionary refusal to admit the evidence in this case had a rational basis in the law and facts of the case.

¶ 16. The record reflects that counsel for the defendants strongly objected to admission of Wis. Stat. § 144.76 as a standard of care. Counsel based his objection on the grounds that application of Wis. Stat. § 144.76, a mandatory DNR reporting requirement, was irrelevant to a third-party common law action based on Achter's possession and control of a UST.

Counsel further objected to admission of the statute on the grounds that the plaintiffs effectively sought to use the statute to create a back door private right of action or negligence per se claim—a result unduly prejudicial to the defense.

¶ 17.   Responding to defense counsel's objections, after hearing oral arguments on the issue at least seven times prior to and during the course of the trial, the circuit court barred evidence pertaining to the existence or violation of Wis. Stat. § 144.76. In doing so, we believe the circuit court properly exercised its discretion to bar evidence with questionable relevancy that might also be unduly prejudicial under the facts of this case. *See* Wis. Stat. § 904.03.

## IV.   DISMISSAL OF MISREPRESENTATION CLAIM

¶ 18.   The plaintiffs submit a one-paragraph argument appealing the circuit court's dismissal of the plaintiffs' claims based on misrepresentation against defendant Daun. In making this argument, the plaintiffs rely only on the bald assertion that they presented evidence concerning the misrepresentation claim at trial. Relying on *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 24, 288 N.W.2d 95 (1980), the plaintiffs assert that a claim should not be dismissed unless "it is quite clear that under no conditions can the plaintiff recover."

¶ 19.   In addressing this claim, we note that the record relating to this issue is incomplete. Material discussions relating to the positions taken by parties as to the disposition of the misrepresentation claims were conducted off the record. In addition, and more impor-

tantly for our purposes, the plaintiffs' appeal from the circuit court's dismissal of the misrepresentation claims is undeveloped. This court declines to address issues raised on appeal that are inadequately briefed. *See McEvoy v. GHC*, 213 Wis. 2d 507, 530, 570 N.W.2d 397, n. 8 (1997); *State v. Flynn*, 190 Wis. 2d 31, 58, 527 N.W.2d 343 (Ct. App. 1994). Accordingly, the circuit court's decision on this claim is affirmed.

## V. DISMISSAL OF STRICT LIABILITY CLAIM AGAINST ACHTER

¶ 20.   The plaintiffs next allege that "the leakage of [the underground storage] tank and the resulting substantial environmental contamination, combined with Achter's failure to take any action to minimize the damage, remediate it, or at least report it to authorities" constitutes an "abnormally dangerous activity" that subjects Achter to strict liability. *See* Brief of Pet. at 43–44. Looking to the definition of abnormally dangerous activities present in Restatement (Second) of Torts, §§ 519–20 (1977), adopted by this court in *Bennett v. Larsen Co.*, 118 Wis. 2d 681, 703, 348 N.W.2d 540 (1984), the circuit court dismissed the plaintiffs' strict liability claims against Achter. Upon review, where the facts are undisputed, whether an activity is abnormally dangerous "is to be determined by the court, upon consideration of all the factors listed in sec. 520, and the weight given to each that it merits upon the facts in evidence." *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 668, 476 N.W.2d 593 (Ct. App. 1991). Thus, a question of law is presented which we review *de novo*.

¶ 21.   Restatement (Second) § 520 lists six factors for determining if an activity is abnormally dangerous:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

These factors are interrelated and should be considered as a whole, with weight being apportioned by the court in accordance with the facts in evidence. *See* Restatement (Second) of Torts, § 520 cmt.1 (1977).

¶ 22. As an initial matter, we reject the plaintiffs' assertion that the leakage and resulting contamination attributable to a UST is the appropriate activity to be analyzed under the Restatement. The contamination is the resulting harm, not the alleged ultrahazardous activity itself. Thus, we instead examine whether Achter's installation and use of a UST on a farm in the 1970s, without more, constitutes an abnormally dangerous activity that requires the imposition of strict liability in the event of harm to others. We conclude based on the facts of this case that Achter's use of a UST did not constitute an abnormally dangerous activity. *Cf. Fortier*, 164 Wis. 2d at 675 (holding that deposit of VOC contaminated waste in landfill was not an abnormally dangerous activity); *Arlington Forest Assocs. v. Exxon Corp.*, 774 F. Supp. 387 (E.D. Va. 1991) (holding that storage and removal of gasoline

from UST does not constitute an abnormally dangerous activity under Virginia law).

¶ 23. USTs, while admittedly disfavored under today's environmental laws, are not inherently dangerous. Absent negligence or application of an outside force, use of a UST does not create a high degree of risk of harm to the person, land or chattels of another. Moreover, those risks that do exist can be minimized by the exercise of reasonable care by the owner or possessor of the tank. As one court has noted:

> If an activity can be performed safely with ordinary care, negligence serves both as an adequate remedy for injury and a sufficient deterrent to carelessness. Strict liability is reserved for selected uncommon and extraordinarily dangerous activities for which negligence is an inadequate deterrent or remedy.

*Arlington*, 774 F. Supp. at 390.

¶ 24. While USTs are not as popular today as they once were, as the testimony of Daun and Achter indicates, use of USTs on farms in the 1970s was a common occurrence. Such storage tanks were commonly placed near farm buildings, and thus near wells, to facilitate ready access by farm implements. All of these factors weigh against imposition of strict liability in this case.

¶ 25. We acknowledge in hindsight that the likelihood of harm resulting from use of a UST that leaks is significant and that such harm may today in certain circumstances outweigh the utility of using USTs. However, at the time the allegedly hazardous activity took place, the value to the community of having USTs was believed to outweigh any danger from their use. *Cf. Fortier*, 164 Wis. 2d at 674–75. Both the general community and the DNR were operating under the

mistaken impression that the introduction of petroleum products into soil presented no threat. Accordingly, because the Restatement factors are to be considered as a whole, based on the facts at hand, we reject application of strict liability in this case and affirm the circuit court's dismissal of the strict liability claim.

## VI.   ABSENCE OF CREDIBLE EVIDENCE

¶ 26.   The plaintiffs attack the jury verdict for the defendants as lacking any "credible evidence." Jury verdicts will be sustained on appeal if there is any "credible evidence" to support the verdict. *See Meurer v. ITT General Controls,* 90 Wis. 2d 438, 449, 280 N.W.2d 156 (1979). Upon review, appellate courts must look for evidence to support the verdict, while "accepting any reasonable inferences favorable to the verdict that the jury could have drawn from that evidence." *Staehler v. Beuthin,* 206 Wis. 2d 609, 616, 557 N.W.2d 487 (Ct. App. 1996). Our presumption in favor of the jury verdict is particularly applicable where the circuit court has indicated its agreement with the verdict. *See Herro v. Dept. of Natural Resources,* 67 Wis. 2d 407, 413, 227 N.W.2d 456 (1975); *McGuire v. Stein's Gift and Garden Center, Inc.,* 178 Wis. 2d 379, 397, 504 N.W.2d 385 (Ct. App. 1993).

¶ 27.   The trial record indicates that the parties presented conflicting evidence on the issue of Achter's negligence in allowing the gasoline leak to occur and in failing to report the offending leak to the DNR. Achter presented evidence that he installed the gas tank following the regular procedures of the time and that he consulted with several members of the farming community who had previously installed similar USTs. He

testified that he regularly checked the level of gasoline in the underground storage tank. When he discovered the leak, Achter arranged to have the tank emptied. He further presented evidence that other farmers and the DNR operated under the belief (now known to be mistaken) that there was no danger of groundwater contamination arising from petroleum products being introduced into the soil.

¶ 28.　Based on the evidence reflected above, we find that there was sufficient credible evidence to support the jury's finding that Achter was "not negligent." In so doing, we also acknowledge the added weight to be given to the verdict in light of the circuit court's finding in this case that:

> I think there's ample evidence from the jury to support the findings of the verdict, particularly as in question one, was Louis Achter negligent in respect, possession of an underground gasoline tank, they answered that no. . . . The jury could easily find that Louis Achter was not negligent and the Court so upholds.

*See Herro*, 67 Wis. 2d at 413. Accordingly, we sustain the jury verdict.

## VII.　ERRONEOUS EXERCISE OF DISCRETION BY USE OF WIS JI—CIVIL 1019

¶ 29.　The plaintiffs appeal the circuit court's use of a modified version of Wisconsin Jury Instruction—Civil 1019 in instructing the jury on the "custom" of Wisconsin farmers. Specifically, the circuit court instructed the jury:

Evidence has been received as to the custom regarding the practice of farmers regarding use of underground storage tanks in the 1970's. This evidence will be weighed and examined by you as it may bear upon whether the conduct of Mr. Achter measures up to the standard of ordinary care. This evidence of practice is not conclusive as to what meets the standard for ordinary care. What is generally done by farmers engaged in a similar activity has some bearing on what an ordinary prudent person would do under the same or like circumstances. A practice which is obviously unreasonable cannot serve to excuse a person from responsibility for carelessness.

¶ 30. The plaintiffs label this instruction an erroneous exercise of the circuit court's discretion. They claim impropriety because the testimony concerning custom was of insufficient weight. They assert that any custom instruction given to the jury should have been focused on the custom of maintaining a *leaking* UST. They argue that the allegedly misleading instruction confused the jury. Finally, the plaintiffs argue that the circuit court erroneously based its decision to give the instruction in part on its own knowledge and judgment.

¶ 31. Circuit courts have significant discretion when conveying instructions to the jury so long as the trial court "fully and fairly informs the jury of the rules and principles of law applicable to the particular case." *Nowatske v. Osterloh*, 198 Wis. 2d 419, 428, 543 N.W.2d 265 (1996) (citing *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 24, 531 N.W.2d 597 (1995)). The circuit court must instruct the jury with due regard to the facts of the case. *See Nowatske*, 198 Wis. 2d at 428. The instruction should not be unduly unfavorable to any party. *See id.* Appellate courts must consider the

challenged jury instruction as a whole to determine if the instruction was erroneous. *See id.* at 429. Finally, when a circuit court has given an erroneous instruction or has erroneously refused to give an instruction, a new trial is not warranted unless the error is prejudicial. *See id.*

¶ 32.   We find that the circuit court properly tailored the standard jury instruction, Wis JI—Civil 1019, to the facts and claims of this case. The Grubes' sole remaining claim against Achter at trial centered on Achter's common law negligence in maintaining a UST on his farm in the 1970s. Custom is a valid indicator of a standard of care in common law negligence cases and circuit courts should not hesitate in appropriate cases to tailor standard jury instructions to the facts of the cases before them. *See Buel v. LaCrosse Transit Co.*, 77 Wis. 2d 480, 492, 253 N.W.2d 232 (1977). Moreover, the plaintiffs' assertion that the custom instruction should have related to the custom of maintaining a "leaking" UST is inapposite. This argument is similar to the one we rejected in the plaintiffs' strict liability appeal. The relevant standard of care is the care an ordinary person would take under similar circumstances to maintain a UST in working order. Thus, the instruction given adequately covers the law and the facts and is not an erroneous exercise of the circuit court's discretion.

## VIII.   RESCISSION CLAIM

¶ 33.   The plaintiffs' original complaint, filed in December of 1988, asked only for contract damages. Seven months later, in late July 1989, the plaintiffs amended their complaint to include a request, in the alternative, that the real estate sale contract with Daun be rescinded based on mutual mistake. On the

first day of trial, defendant Secura objected to the alternative request for relief on the grounds that the Grubes had unduly delayed in asking for rescission, that the Grubes had affirmed the contract by filing their initial suit only in damages, and that the Grubes had affirmed the sales contract by performing it and continuing to make renovations to the property after discovering the contamination.

¶ 34.   In Wisconsin, a party damaged by a sales contract entered through fraud or mistake may choose between the alternative remedies of contract damages or rescission of that contract. *See Weinhagen v. Hayes*, 174 Wis. 233, 249, 178 N.W. 780 (1920). However, that party's right to chose between these remedies is waived if the party "unreasonably delays in asserting that right or affirms the agreement after learning of the fraud or mistake giving rise to the right of rescission." *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 319, 340 N.W.2d 704 (1983) (following Restatement of Restitution, §§ 64, 68 (1937)). Where the facts of a case are "practically undisputed," the question of waiver is one of law that this court can review independently. *See Thompson*, 115 Wis. 2d at 289 (citing *Weinhagen* 174 Wis. at 249). Upon review of the record we find that the Grubes unequivocally affirmed the contract of sale through their actions after discovering the contamination that they assert constitutes the mutual mistake entitling them to rescission.

¶ 35.   The Grubes purchased the property in 1985. They did not discover the underground contamination until late August 1988. They obtained counsel in September 1988, and notified the DNR of the contamination that same month. The Grubes then filed their initial complaint against the defendant Daun in

December 1988, asking only for contract damages.[6] The record reflects that after discovering the groundwater contamination, and after obtaining the advice of counsel, the Grubes continued to live on and make extensive improvements to the contaminated parcel of land.

¶ 36. Gordon Grube testified at his deposition that additional plumbing work was completed on the property in September 1988. In October and November, Grube purchased materials for and fixed the chimney on the home and replaced some of the windows and blinds. In January of the following year, more than four months after discovering the contamination, the Grubes continued to remodel the plumbing system. In May 1989, Gordon Grube purchased materials to landscape the curtilage of the property and poured a cement slab. In August 1989, Gordon Grube purchased and began replacing shingles that had blown off the house and other buildings. In October 1989, the Grubes installed an 8-foot by 24-foot cement patio along the edge of the kitchen porch they had built previously. Finally, we note that the Grubes did not abandon the property until four years after discovering the offending contamination. Even if we assume that there was a mutual mistake of fact that would have allowed the contract to be rescinded, we find the actions described above to be an affirmance of that contract, thus precluding relief based on rescission. The circuit court correctly dismissed the request for relief on that basis.

---

[6] Because we determine that the Grubes affirmed the contract through their actions after discovering the groundwater contamination, we do not reach the question of the effect of the Grubes' failure to plead rescission until their Third Amended Complaint.

## IX. NEW TRIAL IN THE INTERESTS OF JUSTICE

¶ 37.   The plaintiffs assert that the circuit court erred in not granting a new trial in the "interests of justice." This court has inherent and express authority under Wis. Stat. § 751.06 (1995–96) to reverse a judgment if it appears that "the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." *Stivarius v. DiVall,* 121 Wis. 2d 145, 151, 358 N.W.2d 530 (1984). Under this authority, we grant a new trial only with "reluctance and great caution." *Id.*

¶ 38.   This appellate claim is raised by the plaintiffs as a sort of "catch-all" claim. Because we deny relief to the plaintiffs on each of their other appellate questions, and because we find it unlikely that a new trial under "optimum circumstances will produce a different result," *Garcia v. State,* 73 Wis. 2d 651, 654, 245 N.W.2d 654 (1976), we deny the plaintiffs' request for a new trial in the interests of justice.

## X.   TAXABLE COSTS

¶ 39.   Lastly, the plaintiffs appeal the circuit court's assessment of taxable costs. The plaintiffs allege that the defendants failed to itemize properly their bills of cost under Wis. Stat. § 814.10(2)[7] and that the circuit court taxed the costs prematurely, in violation of the procedures laid out in Wis. Stat. § 814.10(4).[8] Awards of costs are a matter of discretion

---

[7] Wis. Stat. § 814.10(2) provides: "Cost Bill, Service. All bills of costs shall be itemized and served with the notice of taxation."

[8] Wis. Stat. § 814.10(4) states:

> Court Review. The clerk shall note on the bill all items disallowed, and all items allowed, to which objections have been made.

for the circuit court, and will not be disturbed absent an erroneous exercise of discretion. *See Hughes v. Chrysler Motors Corp.*, 188 Wis. 2d 1, 13, 523 N.W.2d 197 (Ct. App. 1994).

¶ 40. The record indicates that the defendants sufficiently itemized their costs by category for purposes of application of § 814.10(2). The circuit court examined the itemized bills of cost and found that, after seven years of litigation, the costs incurred were reasonable. We do not believe the court erroneously exercised its discretion in this matter.

¶ 41. Finally, the circuit court explicitly acknowledged that its grant of taxable costs at the July 28, 1995, motion hearing disregarded the procedural requirements present in Wis. Stat. § 814.10. We note that the defendants correctly filed their bills of costs with the clerk and that the plaintiffs responded by filing their objections, all pursuant to statute. The circuit court then took up the matter of some of the bills of costs at a post-verdict motion hearing on July 28, 1995. Based on the written objections of the plaintiffs, and on oral arguments on the issue presented by counsel at that hearing, the circuit court denied the objection. The plaintiffs only then objected to the circuit court's failure to wait for their motion bringing their objections before the court within 10 days of taxation of the costs by the clerk. Because we find the circuit court's actions to be a mere technical violation of the statute that did

This action may be reviewed by the court on motion of the party aggrieved made and served within 10 days after taxation. The review shall be founded on the bill of costs and the objections and proof on file in respect to the bill of costs. No objection shall be entertained on review which was not made before the clerk, except to prevent great hardship or manifest injustice. Motions under this subsection may be heard under s. 807.13.

not prejudice the plaintiffs in any way, the circuit court's actions were harmless error. *See Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 131, 362 N.W.2d 118, 137 (1985).

¶ 42. Accordingly, the plaintiffs' motion for reconsideration is denied. After withdrawing footnote 1 in *Grube v. Daun*, 210 Wis. 2d 682, 563 N.W.2d 523 (1997), we affirm the remaining decisions of the circuit court.