STATE of Wisconsin, Plaintiff-Respondent,

v.

Bradley Alan ST. GEORGE, Defendant-Appellant-
Petitioner.

Supreme Court

*No. 00–2830–CR. Oral argument February 6, 2002.—Decided
May 8, 2002.*

2002 WI 50

(Also reported in 643 N.W.2d 777.)

501

507

For the defendant-appellant-petitioner there were briefs and oral argument by *Donald T. Lang,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Gregory M. Weber,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals,[1] affirming the judgment of conviction and an order denying a motion for a new trial entered by the Circuit Court for Ashland County, Robert E. Eaton, Judge.

¶ 2. This review raises two issues:

1) Was the circuit court's exclusion of the defendant's proffered evidence of the child victim's prior sexual contact with another child a

---

[1] *State v. St. George,* No. 00–2830–CR, unpublished slip op. (Wis. Ct. App. June 5, 2001).

508

denial of the defendant's constitutional right to present evidence?

2) Was the circuit court's exclusion of the testimony of the defendant's expert witness an erroneous exercise of discretion, or alternatively, a deprivation of the defendant's constitutional right to present evidence, as the defendant asserted?

¶ 3. The court of appeals concluded that these questions should be answered no and affirmed the judgment of conviction and the order denying a new trial.

¶ 4. We agree with the court of appeals that the defendant was not denied his constitutional right to present evidence when the circuit court excluded evidence of the child victim's prior sexual contact with another child. Exclusion of the defendant's evidence of the complaining witness's prior sexual conduct was appropriate under Wis. Stat. § 972.11(2), the rape shield statute. The defendant has failed to meet the requirements set forth in our cases for the proffered evidence to fall within the judicial exceptions to § 972.11(2).

¶ 5. We further conclude, contrary to the court of appeals, that the circuit court erroneously exercised its discretion in excluding the testimony of the defendant's expert witness. We reach this conclusion because in exercising its discretion to exclude the testimony of the defendant's expert witness, the circuit court failed to take into account whether the defendant was denied his constitutional right to present a defense, as the defendant claimed. For the reasons set forth, we conclude that exclusion of the testimony of the expert witness about recantation and interview techniques denied the defendant his constitutional right to present a defense. Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for a new trial.

509

¶ 6. The relevant facts are set forth below, and additional facts are set forth in the discussion of each legal issue.

¶ 7. In October of 1998, the defendant was living in Ashland, Wisconsin, staying most nights with his long-term girlfriend, Tracy Harvey. On the night of October 21–22, 1998, the defendant and Ms. Harvey were sleeping together in her bed. They were joined by one of Ms. Harvey's children, five-year-old Kayla. Sometime during that night the defendant allegedly fondled Kayla's vagina.

¶ 8. The next day Kayla reported the fondling to her mother. Over the course of the next few weeks and months, Kayla allegedly also reported the fondling to a doctor and a social worker. The defendant was charged with first-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(1) (1999–2000).[2]

¶ 9. The State presented several witnesses who testified that Kayla made out-of-court statements claiming the defendant had improperly touched her. At trial, Kayla denied the incident had ever occurred and even that she had ever made some of the reports. The defendant denied that he had improperly touched the youngster. Ms. Harvey testified that Kayla told her that the defendant had not improperly touched her. Ms. Harvey also stated that she believed the defendant had

---

[2] Wisconsin Stat. § 948.02(1) provides: "First Degree Sexual Assault. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony."

All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

not improperly touched Kayla and that Ms. Harvey was continuing her relationship with him.

¶ 10. The jury found the defendant guilty, and he was sentenced to 20 years in prison. The defendant moved for post-conviction relief, arguing the same issues as are before this court. The motion was denied. On appeal to the court of appeals, the defendant raised the same two issues. The court of appeals affirmed the judgment of the circuit court.

## II

¶ 11. The defendant first challenges his conviction and the order denying his motion for a new trial on the ground that the circuit court violated his constitutional right to present evidence when it excluded evidence that Kayla had experienced sexual contact with another child. According to the defendant, there is evidence that at least one child, and perhaps two other children, previously touched the victim on her private parts. ﹀

¶ 12. Before trial, the State filed a motion seeking to exclude evidence that two other children previously had sexual contact with Kayla. The State relied on Wis. Stat. § 972.11(2)(b), the rape shield statute, as the basis for excluding the proffered evidence. Section 972.11(2)(b) provides "a defendant may not offer evidence relating to a victim's past sexual history or reputation absent application of a statutory or judicially created exception"[3] at trial.[4] The statute reads as follows, in relevant part:

---

[3] *State v. Jackson,* 216 Wis. 2d 646, 657, 575 N.W.2d 475 (1998).

[4] There are certain enumerated exceptions that are not applicable to the present case.

(b) If the defendant is accused of a crime under s. . . . 948.02 . . . any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury . . . .

¶ 13. The rape shield statute reflects the "view that generally evidence of a complainant's prior sexual conduct is irrelevant or, if relevant, substantially outweighed by its prejudicial effect."[5] The proffered evidence is explicitly barred by the rape shield statute.

¶ 14. Our inquiry does not, however, end with this examination of the statute. We have recognized, as the defendant asserts, that the confrontation and compulsory process clauses of the Sixth Amendment of the U.S. Constitution[6] and Article I, Section 7 of the Wisconsin Constitution[7] "grant defendants a constitutional right to present evidence."[8] Our court has stated that "[t]he

[5] *State v. Pulizzano*, 155 Wis. 2d 633, 644, 456 N.W.2d 325 (1990).

[6] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . ."

[7] "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face; [and] to have compulsory process to compel the attendance of witnesses in his behalf . . . ."

[8] *Pulizzano*, 155 Wis. 2d at 645.

" 'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers v. Mississippi*, 410 U.S. 284

rights granted by the confrontation and compulsory process clauses are fundamental and essential to achieving the constitutional objective of a fair trial."[9] The confrontation clause grants defendants "the right to 'effective' cross-examination of witnesses whose testimony is adverse,"[10] and the compulsory process clause "grants defendants the right to admit favorable testimony."[11]

¶ 15. Despite these constitutional guarantees, a defendant's right to present evidence is not absolute.[12] "Confrontation and compulsory process only grant defendants the constitutional right to present relevant evidence not substantially outweighed by its prejudicial effect."[13] Thus, the rape shield statute excluding evidence proffered by the defendant does not on its face violate a defendant's constitutional right to present

---

(1973), or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, *Washington v. Texas,* 388 U.S. 14, 23 (1967); *Davis v. Alaska,* 415 U.S. 308 (1974), the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' *California v. Trombetta,* 467 U.S. 479, 485 (1984); *cf. Strickland v. Washington,* 466 U.S. 668, 684–85 (1984) ('The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment').' " *United States v. Scheffer,* 523 U.S. 303, 329–30 n.16 (1998) (Stevens, J., dissenting) (parallel citations omitted.).

[9] *Pulizzano,* 155 Wis. 2d at 645 (citing *Chambers v. Mississippi,* 410 U.S. 284, 294–95 (1973)).

[10] *Pulizzano,* 155 Wis. 2d at 645 (citation omitted).

[11] *Id.* at 645–46 (citations omitted).

[12] *Chambers,* 410 U.S. at 295.

[13] *Pulizzano,* 155 Wis. 2d at 646.

evidence.[14] However, under some circumstances the evidence of a victim's prior sexual conduct "may be so relevant and probative that the defendant's right to present it is constitutionally protected."[15] Thus, the rape shield statute "may in a given case impermissibly infringe upon a defendant's rights to confrontation and compulsory process."[16]

¶ 16. We must, therefore, determine whether in the present case the application of Wis. Stat. § 972.11 deprives the defendant of his constitutional rights. This determination is a question of "constitutional fact" that this court determines independently of the circuit court and the court of appeals but benefiting from their analyses.[17]

---

[14] *Id.*

[15] *Id.* at 647.

[16] *Id.* at 647–48.

[17] *State v. Dodson,* 219 Wis. 2d 65, 69–70, 580 N.W.2d 181 (1998) (defendant's Sixth Amendment right to present a defense is a question of constitutional fact determined independently by the appellate court); *Pulizzano,* 155 Wis. 2d at 648 (claimed deprivation of confrontation and compulsory process rights is a question of constitutional fact reviewed without deference to the circuit court and court of appeals); *State v. Robinson,* 146 Wis. 2d 315, 331–32, 431 N.W.2d 165 (1988) (court independently determined relevancy of evidence on constitutional claim of violation of right to present a defense in sexual assault case); *State v. Johnson,* 118 Wis. 2d 472, 479, 348 N.W.2d 196 (1984) (circuit court's authority to issue a discretionary ruling on a procedural issue may not be exercised until it accommodates the accused's due process rights to present a defense).

*But see State v. Hammer,* 2000 WI 92, ¶¶ 44–49, 236 Wis. 2d 686, 613 N.W.2d 629 (ignoring the usual standard of review that

¶ 17. The defendant contends that his proffered evidence shows that Kayla had a source of sexual knowledge apart from her alleged experience with him. He argues that because a child as young as Kayla would not possess sufficient knowledge or experience to manufacture the accusation, the jurors will infer that her knowledge comes from the defendant's assault. The evidence of other sexual contacts would, claims the defendant, show an alternate source of the victim's knowledge about sexual matters and would show that the victim possessed sufficient knowledge to formulate her out-of-court accusation.[18]

¶ 18. For the defendant to establish a constitutional right to the admissibility of the proffered evidence that is otherwise excluded by the rape shield statute, the defendant must satisfy a two-part inquiry.[19]

¶ 19. In the first part of the inquiry, the defendant must satisfy each of five factors through an offer of proof that states an evidentiary hypothesis bolstered by a statement of fact sufficient to justify the conclusion or inference the court is asked to accept.[20] The five factors are:

---

questions of constitutional fact are determined independently by this court); *State v. Walker,* 154 Wis. 2d 158, 192, 453 N.W.2d 127 (1990) (same).

[18] For admission of evidence of prior sexual experiences of a child victim to prove a source of the victim's sexual knowledge other than the victim's experience with the defendant, see, for example, *Dodson,* 219 Wis. 2d at 83; *Pulizzano,* 155 Wis. 2d at 652–53.

[19] *Dodson,* 219 Wis. 2d at 72; *Pulizzano,* 155 Wis. 2d at 648–49, 654.

[20] *Hammer,* 2000 WI 92, ¶ 44; *Dodson,* 219 Wis. 2d at 72.

1) The prior act clearly occurred.

2) The act closely resembles that in the present case.

3) The prior act is clearly relevant to a material issue.

4) The evidence is necessary to the defendant's case.

5) The probative value outweighs the prejudicial effect.[21]

¶ 20. After the defendant successfully satisfies the five factors to establish a constitutional right to present evidence, a court undertakes the second part of the inquiry by determining whether the defendant's right to present the proffered evidence is nonetheless outweighed by the State's compelling interest to exclude the evidence.[22]

¶ 21. In the present case, we conclude, as did the circuit court and the court of appeals, that the defendant's offer of proof did meet factors one and two of the five factors. The circuit court was satisfied that

---

The State did not challenge the sufficiency of the offer of proof, and we do not address this issue.

The defendant's brief asserts that if defense counsel's failure to file a motion to introduce prior sexual conduct evidence under Wis. Stat. § 971.31(11) waived his constitutional claim, he was denied effective counsel. We have addressed the defendant's claim on the merits and therefore we need not and do not address any ineffective assistance of counsel claim.

[21] *Hammer,* 2000 WI 92, ¶ 44; *Dodson,* 219 Wis. 2d at 72.

[22] *Dodson,* 219 Wis. 2d at 72–73.

either Kayla or her mother would testify to the fact that at least one other child had touched Kayla's vagina in the past. This offer of proof satisfies the first factor's requirement that the prior acts clearly occurred. Furthermore, the defendant's offer of proof satisfies the second factor's requirement that the prior acts resemble the defendant's alleged conduct.

¶ 22. However, we conclude, as did the circuit court and the court of appeals, that the defendant's offer of proof fails to satisfy the final three factors.

¶ 23. The proffered evidence does not satisfy factor three, the relevancy test. Under Wis. Stat. § 904.01, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence of Kayla's other sexual experiences is relevant in the present case if a jury might infer that Kayla acquired sexual knowledge because the defendant committed the act charged.[23]

¶ 24. Kayla's sexual knowledge fails to satisfy the relevancy requirement of factor three. There is nothing precocious about Kayla's statements that someone touched her body. Kayla's accusation that the defendant touched her vagina and "wiggled and jiggled" is not a description of age-inappropriate knowledge. Kayla's description is neither graphic nor precise enough that a jury would infer that a child Kayla's age would be able to make this description only if the conduct charged actually occurred. The sexual knowledge Kayla possessed was mere knowledge of her body. Such knowl-

---

[23] *Id.* at 80; Christopher B. Reid, *The Sexual Innocence Inference Theory as a Basis for the Admissibility of a Child Molestation Victim's Prior Sexual Conduct,* 91 Mich. L. Rev. 827, 829–30 (1993).

edge is not so unusual as to raise an inference that some sexual contact with the defendant must have taken place.

¶ 25. The defendant asserts that the jury inference comes not from Kayla's knowledge of her body, but from the knowledge that someone would have a desire to fondle the private parts of another. Kayla has not expressed knowledge that someone would want to touch her body for sexual gratification, which arguably would be evidence of sexual precociousness or knowledge beyond her years. Kayla expressed knowledge about the part of her body touched, not knowledge about why someone would desire to touch her.

■

¶ 26. We conclude that the testimony that Kayla claimed to have been touched on the vagina does not show such precocious sexual knowledge that a jury would believe that some sexual contact with the defendant must necessarily have occurred. Without this inference by the jury, there is no reason for the defense to show that Kayla could have acquired sexual knowledge from prior sexual encounters. No inference, in this case, equals little if any relevance. Without the reasonable possibility that a jury would make the inference the defendant asserts, the defendant has not met factor three, relevance.

¶ 27. Because we conclude the evidence was not relevant, factors four and five cannot be met. The evidence cannot be considered necessary to the defendant's case (factor four), and the probative value of the evidence cannot outweigh any prejudicial effect (factor five).

¶ 28. Because the defendant has not satisfied all five factors, we need not continue to the second inquiry, that is, whether the defendant's right to present the

proffered evidence is outweighed by a compelling state interest to exclude the evidence.

¶ 29. Therefore, we conclude that the exclusion of the proffered evidence of Kayla's prior sexual conduct with at least one other child does not infringe on the defendant's constitutional right to present evidence and was appropriate under Wis. Stat. § 972.11(2). We further conclude, as did the court of appeals, that the circuit court appropriately exercised its discretion to exclude the proffered evidence.

## III

¶ 30. The defendant also challenges his conviction and the order denying his motion for a new trial by arguing that his expert witness, Dr. Stonefeld, was not only qualified as an expert witness in the limited topics upon which he was going to testify but also that exclusion of the testimony deprived the defendant of his constitutional right to present a defense.

¶ 31. The defendant offered Dr. Stonefeld's testimony to rebut the testimony of two of the State's witnesses. One of the State's witnesses was Maureen (Mimi) Rappley, a clinical social worker who was experienced in counseling child sexual abuse victims. Ms. Rappley testified about Kayla's recantation. Ms. Rappley stated, among other things, that approximately 20–24% of child sexual abuse victims recant their reports of abuse, but 92% of those recanting later reaffirm the charge of sexual abuse.

¶ 32. A second witness for the State, Ty Juoni, a child protection investigator, testified that he interviewed Kayla and that she told him that the defendant touched her with his finger. Mr. Juoni explained that he had used a "cognitive graphic interview" technique with

Kayla. He characterized the technique as "a nationally accepted process that obtains accurate information from children" using non-leading questions. He thus apparently vouched for the reliability of the technique he had used.

¶ 33. According to the defendant, Dr. Stonefeld would make two points. First, in order to rebut Ms. Rappley's testimony about recantation, he would testify that it was not possible to assign a specific level of scientific probability to the truthfulness of Kayla's allegation of sexual assault in the present case. Dr. Stonefeld would testify that no scientific basis exists to conclude whether a recanted accusation is truthful in a particular case, even though a study claimed that 92% of the children studied who recanted later reaffirmed their original accusation.

¶ 34. Second, Dr. Stonefeld would state that the cognitive graphic interview technique used with Kayla does not guarantee reliable results, thereby rebutting Mr. Juoni's testimony about the reliability of his interview technique. In its opening statement the State claimed that Mr. Juoni employed a "nationally-recognized system for questioning child sexual assault victims" that is "designed to elicit answers that are in conformity with the truth." Mr. Juoni testified that the cognitive graphic interview is a process that obtains "accurate information from children. . . . " Dr. Stonefeld would also testify that the duration and manner in which the interview was conducted in the present case raised questions about the reliability of the interview process.

¶ 35. As court of appeals Chief Judge Thomas Cane wrote in his dissent, "[I]n short, Stonefeld was going to testify as to the scientific limitations on the inferences that could be fairly drawn from the use of a

cognitive graphic interview or the fact that a child had recanted a prior claim of sexual abuse."

¶ 36. The State objected to Dr. Stonefeld's testimony on the ground that Dr. Stonefeld was not sufficiently qualified to testify concerning these issues. The defendant argued that any limitations of Dr. Stonefeld's qualifications regarding actual hands-on experience perceived by the circuit court go to the weight of his testimony, not its admissibility, and could be raised by the State on cross-examination and in argument.

¶ 37. The admissibility of expert opinion testimony lies in the discretion of the circuit court.[24] A circuit court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon facts in the record.[25] The circuit court in the present case based its decision upon the facts in the record. The question then is whether the circuit court applied the correct legal principles to the facts of record.[26] This court decides any questions of law which may arise during its review of an exercise of discretion independently of the circuit court and court of appeals.[27]

---

[24] *Martindale v. Ripp,* 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698; *State v. Watson,* 227 Wis. 2d 167, 186, 595 N.W.2d 403 (1999).

[25] *King v. King,* 224 Wis. 2d 235, 248, 590 N.W.2d 480 (1999).

[26] *Martindale,* 2001 WI 113, ¶ 29 (quoting *State v. Wollman,* 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979)). *See also Watson,* 227 Wis. 2d at 186; *State v. Pittman,* 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993).

[27] *King,* 224 Wis. 2d 235, 248, 590 N.W.2d 480 (1999).

¶ 38. The legal principles applicable to the present case are two-fold. One, the circuit court must adhere to the evidentiary rules applicable to expert witnesses, and two, because the defendant asserted that the exclusion of the evidence would violate his constitutional right to present a defense, the circuit court must consider constitutional law principles in making its evidentiary ruling.

¶ 39. We first consider the applicable evidentiary rules. Testimony of an expert witness is governed by Wis. Stat. § 907.02, which provides that if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, the witness may testify. This provision "continues the tradition of liberally admitting expert testimony" in Wisconsin.[28] Wisconsin Stat. § 907.02 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

¶ 40. Whether a witness "is qualified to give an opinion depends upon whether he or she has superior knowledge in the area in which the precise question lies."[29] Having a medical license does not automatically qualify a person to offer expert testimony on every issue

[28] 7 Daniel Blinka, *Wisconsin Practice: Wisconsin Evidence* § 702.202, at 478 (2d ed. 2001).

[29] *Tanner v. Shoupe,* 228 Wis. 2d 357, 370, 596 N.W.2d 805 (Ct. App. 1999).

in the field of medicine. If the witness has no scientific, technical, or other specialized knowledge about the particular issues in the case then the witness's opinion is not reliable enough to be probative.[30]

¶ 41. The circuit court was to apply these legal principles to determine whether Dr. Stonefeld was qualified to testify about the limited issues for which his testimony was proffered. The circuit court heard the following facts relating to Dr. Stonefeld's qualifications.

¶ 42. Dr. Stonefeld has substantial training and experience as a psychiatrist and neurologist. He has spent approximately 33 years as a physician specializing in both neurology and psychiatry. He is a diplomate of the American Board of Forensic Examiners, with a fellowship at the Royal Society of Medicine and the American Academy of Psychosomatic Medicine. His practice is in direct patient care and focuses 80% in psychiatry and 20% in neurology. He has testified as an expert witness about 30–40 times.

¶ 43. Dr. Stonefeld has counseled 10–15 adults who were survivors of child abuse and is familiar with literature regarding sexual assault cases. He has counseled two or three children who were victims of child abuse. Dr. Stonefeld has, however, had limited training in and experience with recantation and children.

---

[30] The admissibility of the testimony of an expert witness depends on a combination of the witness's qualifications, the relevancy of the testimony, the assistance of the testimony to the trier of fact and considerations set forth in Wis. Stat. § 904.03, namely, whether the probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. 7 Daniel Blinka, *Wisconsin Practice: Wisconsin Evidence* § 702.202, at 480–81 (2d ed. 2001).

¶ 44. Although Dr. Stonefeld has not attended programs on the specific issue of recantation and had not read the recantation study to which Ms. Rappley referred, he had read literature in the areas in which he was to testify in preparation for the trial, especially in the area of recantation.

¶ 45. Dr. Stonefeld explained that 90% of what he does and was trained to do involved interview techniques. He has, however, had limited professional experience in interviewing children or in the cognitive graphic interviewing technique.

¶ 46. Dr. Stonefeld's testimony was to be limited in scope. He was to testify regarding how the statistics about "recanters" returning to their original accusation does not help determine the truthfulness of a complainant in a particular case. He was to testify about the limited conclusions that could be drawn from the statistics on recantation that Ms. Rappley presented to the jury. Furthermore he was to testify regarding interviewing techniques.

¶ 47. The gist of the circuit court's ruling to exclude the testimony of the expert witness was that Dr. Stonefeld had not extensively studied and had no experience with recantation or child sexual abuse interviewing techniques. The circuit court therefore concluded that Dr. Stonefeld did not meet the standard of specialized knowledge in recantation and in the cognitive graphic interview technique to testify as an expert on those matters. The circuit court also concluded that the testimony Dr. Stonefeld would present was not likely to assist the jury in understanding the evidence.

██

¶ 48. In the exercise of its discretion to admit or exclude the testimony of the defendant's expert, the circuit court did not, however, give consideration to the

second issue of law presented by the defendant in the case at bar, namely, the defendant's constitutional claim that exclusion of the expert opinion evidence deprived him of his right to present a defense. In considering only Dr. Stonefeld's qualifications to testify on the limited issues, the circuit court concluded that it would exercise its discretion to exclude the expert witness as not being qualified to testify on these limited issues. The circuit court's failure to consider the constitutional claims presented by the defendant in exercising its discretion was an error of law.

¶ 49. This court must therefore determine as a matter of law whether the defendant was denied his constitutional right to present a defense when the circuit court excluded the expert testimony.[31] If the defendant was denied his constitutional right to present a defense, the circuit court erroneously exercised its discretion to exclude the expert witness testimony.

¶ 50. The defendant is not attacking the constitutionality of Wis. Stat. § 907.02, the rule of evidence relating to admission of the testimony of expert witnesses. Indeed he could not. The U.S. Supreme Court has declared that states have broad latitude under the U.S. Constitution to establish rules excluding evidence

---

[31] *Cf. State v. Dodson*, 219 Wis. 2d 65, 69–70, 580 N.W.2d 181 (1998) (determination of whether Wis. Stat. § 972.11 deprives the defendant of his constitutional rights is a question of constitutional fact to be determined independently by this court); *State v. Pulizzano*, 155 Wis. 2d 633, 648, 456 N.W.2d 325 (1990) (same) (*see* additional citations in ¶ 16, n.17.)

from criminal trials. An accused's right to present evidence is subject to reasonable restrictions.[32]

¶ 51. Nevertheless, the application of an evidentiary rule may, as we explained previously in our discussion of the application of the rape shield statute, impermissibly abridge an accused's right to present a defense in certain circumstances. The constitutional issue in the present case is whether Wis. Stat. § 907.02, the rule of evidence upon which the circuit court excluded the testimony of Dr. Stonefeld, as applied in the present case, impermissibly infringed upon the defendant's right to present a defense.

¶ 52. The U.S. Supreme Court has set forth the following test to determine when a state's rules excluding defense evidence abridge an accused's right to present a defense: There is no abridgment of the accused's right to present a defense so long as the rules of evidence "are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' "[33] The U.S. Supreme Court went on to state that the exclusion of

---

[32] *United States v. Scheffer,* 523 U.S. 303, 308 (1998).

The accused's right to present evidence "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973).

"*Chambers* therefore does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *United States v. Scheffer,* 523 U.S. 303, 316 (1998).

[33] *Scheffer,* 523 U.S. at 308 (quoting *Rock v. Arkansas,* 483 U.S. 44, 56 (1987), and citing *Michigan v. Lucas,* 500 U.S. 145, 151 (1991)).

evidence is "unconstitutionally arbitrary or dispropor-tionate only where it has infringed upon a weighty interest of the accused."[34] The weighty interest of the defendant is to present "fundamental elements" of his defense.[35]

¶ 53. For the defendant to establish a constitu-tional right to the admissibility of the proffered expert witness testimony in the present case, the defendant must satisfy a two-part inquiry, similar to the inquiry this court has developed in determining whether the application of the rape shield statute excluding certain evidence deprives an accused of constitutional rights to present a defense. This two-part inquiry enables a circuit court to determine the accused's interest in

---

[34] *Scheffer,* 523 U.S. at 308 (citing *Rock,* 483 U.S. at 58; *Chambers,* 410 U.S. at 302; *Washington v. Texas,* 388 U.S. 14, 22–23 (1967)).

The court of appeals has explained these principles in *State v. Johnson,* 118 Wis. 2d 472, 479, 348 N.W.2d 196 (Ct. App. 1984) (citations omitted), as follows:

> One of the essential ingredients of due process in a criminal trial is the right to a fair opportunity to defend against the State's accusations. . . . A corollary to this principle is the right to present relevant and competent evidence. . . . Important as these rights are, they are not absolute. They may bow to other legitimate state interests in the criminal trial process. These competing state interests, however, must be substantial to overcome the claim of the accused. . . .

> Thus a trial court's decision on a procedural issue at trial may nominally be labeled discretionary, but the court's authority may not be exercised until it accommodates the accused's due process rights to present a defense. Without a compelling state interest, the court's ruling may not interfere with the accused's opportunity to present crucial evidence to the jury.

[35] *Scheffer,* 523 U.S. at 315.

admitting the evidence and to determine whether the evidence is clearly central to the defense and the exclusion of the evidence is arbitrary and disproportionate to the purpose of the rule of exclusion, so that exclusion "undermine[s] fundamental elements of the defendant's defense."[36]

¶ 54. In the first part of the inquiry, the defendant must satisfy each of the following four factors through an offer of proof. The defendant must show:

1) The testimony of the expert witness met the standards of Wis. Stat. § 907.02 governing the admission of expert testimony.[37]

2) The expert witness's testimony was clearly relevant to a material issue in this case.[38]

3) The expert witness's testimony was necessary to the defendant's case.[39]

---

[36] *Id.*

[37] This factor is similar to the first and second factors of the *Pulizzano* test set forth in ¶ 19 above. Instead of asking whether the prior sexual act occurred and whether the acts closely resemble each other, the question in the present case is whether the circuit court may properly exercise its discretion to admit the testimony.

[38] This factor is similar to the third factor of the *Pulizzano* test set forth in ¶ 19 above.

[39] This factor is similar to the fourth factor of the *Pulizzano* test set forth in ¶ 19 above.

4) The probative value of the testimony of the defendant's expert witness outweighed its prejudicial effect.[40]

¶ 55. After the defendant successfully satisfies these four factors to establish a constitutional right to present the expert testimony, a court undertakes the second part of the inquiry by determining whether the defendant's right to present the proffered evidence is nonetheless outweighed by the State's compelling interest to exclude the evidence.[41]

¶ 56. We conclude, for the reasons set forth below, that the defendant in the present case has met the four factors of the first part of the inquiry and has also met the second part of the inquiry. Accordingly, exclusion of the evidence violated the defendant's constitutional right to present a defense.

¶ 57. First, the testimony of the expert witness met the standards of Wis. Stat. § 907.02. Because the admissibility of the expert witness is discretionary with the circuit court, the defendant must show that, regardless of the constitutional considerations presented, had the circuit court admitted the evidence, the circuit court's exercise of its discretion would have been upheld by a reviewing court.

¶ 58. It is well settled that judicial discretion is by definition an exercise of proper judgment that could

---

[40] This factor is similar to the fifth factor of the *Pulizzano* test set forth in ¶ 19 above.

[41] This inquiry is similar to the inquiry in the *Pulizzano* test set forth in ¶ 20 above.

reasonably permit an opposite conclusion by another judge or by a reviewing court.[42] The fact the circuit court in the present case exercised its discretion to exclude the expert testimony evidence does not necessarily mean that the evidence was not admissible or that the evidence was irrelevant.

¶ 59. Indeed, we conclude that had the circuit court exercised its discretion to admit the expert testimony in the present case, that discretionary decision would have been upheld by this court. Dr. Stonefeld has sufficient qualifications to testify as a person knowledgeable about the meaning of statistical data and about interviewing processes and techniques. On the basis of his training and knowledge, Dr. Stonefeld had expertise in the limited topics upon which he was going to testify. He did not have to match the specific credentials of the State's experts. He did not have to be familiar with the recantation paper upon which the State's witness relied.

¶ 60. Second, Dr. Stonefeld's testimony was relevant to a material issue in this case: the credibility of Kayla and the defendant. Indeed credibility was central to both the State's prosecution and the defendant's claim of innocence. Both the defendant and Kayla took the stand and denied the alleged sexual contact. In order to succeed in the prosecution, the State had to introduce Kayla's contradictory out-of-court statements and attempt to show why her statements accusing the defendant were more reliable than those denying he assaulted her. The State had to explain why her an-

---

[42] *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981); *State v. Wurtz,* 141 Wis. 2d 795, 800–01, 416 N.W.2d 623 (Ct. App. 1987).

swers would change depending on the circumstances under which the statements were made.

¶ 61. Similarly, for a successful defense the defendant had to undermine the State's case and to explain why Kayla's statements favorable to him were as reliable or more reliable than those she gave accusing him of sexual contact with her.

¶ 62. Therefore, because Dr. Stonefeld's testimony was designed to undermine the State's witnesses, it was relevant to a material issue in the case, Kayla's and the defendant's credibility.

¶ 63. Third, Dr. Stonefeld's testimony was necessary to the defendant's defense. The case was shaping up as a battle of experts. The State relied upon its experts. The defendant had none.

¶ 64. The State's use of its experts and the defendant's inability to produce an expert was especially damaging to the defense in this case. The State's witnesses, without any rebuttal witnesses, were able to give the impression that Kayla's recantation was either inconsequential or perhaps even evidence of the truthfulness of her initial accusation and to give the impression that the cognitive graphic interview technique was a "nationally recognized system for questioning child assault victims" that is "designed to elicit answers that are in conformity with the truth" and obtains "accurate information from children."

¶ 65. Those impressions were further enhanced by the State's closing argument, which commented on the defendant's failure to rebut the testimony of the State's two expert witnesses. In closing argument the prosecutor referred twice to the defendant's failure to rebut the State's expert witnesses. The prosecutor stated: "That common sense is aided in this case by the *unrebutted* testimony of Miss Mimi Rappley . . . ."

The prosecutor also stated: "And Ty [Juoni] was going through the very particular questions using, using what is—*the unrebutted testimony*—a nationally recognized system for garnering accurate information about sexual assaults." (Emphasis added.)

¶ 66. The jury did not know, of course, that the prosecutor's efforts caused the defendant's inability to rebut the testimony of the State's witnesses. The jury found the defendant guilty, apparently believing, with the assistance of Ms. Rappley's and Mr. Juoni's testimony, that Kayla's out-of-court accusations were more reliable than her trial testimony recanting the accusations.

¶ 67. The jury was not afforded the opportunity to consider Dr. Stonefeld's observations concerning the practical limitations to any conclusions that could be fairly drawn from the testimony of Ms. Rappley and Mr. Juoni.

¶ 68. Fourth, the probative value of Dr. Stonefeld's testimony would have outweighed its prejudicial effect. The State argues that Dr. Stonefeld's testimony would have a prejudicial effect because it would mislead the jury. The State contends that Dr. Stonefeld's professional title, background, and use of a technical vocabulary might create the appearance of an expertise and credibility that Dr. Stonefeld did not in fact possess, and the jury would give his testimony undue weight. We conclude that the State could have overcome any such problem by challenging Dr. Stonefeld on cross-examination and by arguing about the probative value of his testimony to the jury.

¶ 69. The State further argued that no expert witness, whatever his or her qualifications, should have been allowed to testify on behalf of the defendant about

the recantation statistics, because no expert testimony was needed to assist the jury in understanding the statistics. We are not convinced by this argument. Statistics is a subject on which jurors, as well as judges, may very well need assistance. Furthermore, "[t]hat a lay witness of ordinary intelligence may also understand the subject matter does not mean that the opinion of an expert in the field would not be of assistance to the trier of fact in understanding the evidence or determining a fact in issue."[43]

¶ 70. Regarding the second inquiry, the defendant's right to present the proffered evidence is not outweighed by any State compelling interest to exclude the evidence. The defendant's right and interest in presenting the expert testimony is measured by the first four factors set forth above.[44] The State argues that it has a compelling interest to exclude the evidence. It contends that the circuit court's exercise of its discretion to exclude the expert witness testimony, even when the circuit court fails to consider the defendant's constitutional claim, assures both fairness and reliability in the ascertainment of guilt or innocence. The State also asserts that the admission of the expert testimony would have misled the jury, as we explained above.

¶ 71. Because we conclude that Dr. Stonefeld's expert testimony was admissible, that the testimony was relevant and necessary to the defendant's case, and

---

[43] *State v. Watson,* 227 Wis. 2d 167, 187, 595 N.W.2d 403 (1999) (quoting *State v. Eichman,* 155 Wis. 2d 552, 569, 456 N.W.2d 143 (1990)).

[44] For a similar analysis in admitting evidence as an exception to the rape shield statute, see *State v. Pulizzano,* 155 Wis. 2d 633, 656–57, 456 N.W.2d 325 (1990).

that the probative value of the testimony outweighed its prejudicial effect, we determine that the State's interest in excluding the evidence on the basis of a discretionary decision of the circuit court that failed to weigh constitutional considerations was not so compelling that it outweighed the defendant's constitutionally protected interest in presenting a defense.

¶ 72. After considering the two parts of the inquiry we have set forth, we conclude that where, as here, the defendant challenges the circuit court's evidentiary ruling on constitutional grounds, the circuit court's discretionary exclusion of the defendant's expert witness is disproportionate to the purposes the expert witness rule is designed to serve. The purpose of the expert witness rule is to ensure that relevant evidence is presented to the trier of fact and that irrelevant, non-probative evidence is excluded. In the present case, the testimony of the expert witness was admissible as a proper exercise of a circuit court's discretion and was relevant, material, necessary, reliable, probative, and helpful. The circuit court's exclusion of the expert witness testimony infringed upon a "weighty interest"[45] of the defendant because it significantly impaired the defendant's ability to present a defense in the present case.

¶ 73. In summary, we conclude, contrary to the decision of the court of appeals, that the circuit court erroneously exercised its discretion in excluding the testimony of the defendant's expert witness. We reach this conclusion because in exercising its discretion to exclude the testimony of the defendant's expert witness, the circuit court failed to take into account, as the

---

[45] *Scheffer*, 523 U.S. at 308.

defendant requested, whether the defendant was denied his constitutional right to present a defense. In applying the two-part inquiry we have set forth, we conclude that exclusion of the testimony of the expert witness about recantation and interview techniques denied the defendant his constitutional right to present evidence clearly central to his defense. Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for a new trial.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶ 74. DIANE S. SYKES, J. *(concurring).* The question in this case is whether the trial court's discretionary decisions on certain evidentiary issues deprived the defendant of his right to present a defense under the Fifth and Sixth Amendments. I agree completely with the majority's resolution of the rape shield law issue under *State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990).

¶ 75. I also agree generally with the majority's analysis of the trial court's decision to exclude the defense expert witness under Wis. Stat. § 907.02. Adaptation of the *Pulizzano* approach for purposes of the expert witness issue in this case provides a reasonable enough method by which to balance the defendant's right to present a defense against the state's interest in controlling the reliability and fairness of the criminal trial process through the rules of evidence.

¶ 76. I write separately to emphasize my concern about constitutionalizing the multitude of discretionary evidentiary decisions that occur on a daily basis in criminal trials in the circuit courts of this state. In that sense, I agree with the dissent's position that we generally should not require circuit court judges to engage

535

in convoluted "mental gymnastics, in order to issue decisions on the admissibility of evidence." Dissent at ¶ 90. But for the constitutional dimension to the expert witness issue in this case, the circuit court's refusal to admit the defense expert's testimony under Wis. Stat. § 907.02 would easily be upheld on the deferential "erroneous exercise of discretion" standard of review.

¶ 77. In my view, the constitutional issue comes into play here not merely because this is a criminal case and the accused has a "right to present a defense" pursuant to the due process, confrontation, and compulsory process guarantees of the Fifth and Sixth Amendments. Otherwise, almost every evidentiary ruling in a criminal case could be said to have constitutional implications.

¶ 78. Rather, the constitutional issue arises because the defense expert's testimony, excluded by the circuit court's application of the expert witness rule, implicated a "weighty interest of the accused" and significantly undermined a fundamental element of the defense within the meaning of *Rock v. Arkansas,* 483 U.S. 44, 58 (1987), *Chambers v. Mississippi,* 410 U.S. 284, 302–03 (1973), *Washington v. Texas,* 388 U.S. 14, 22–23 (1967). *See United States v. Scheffer,* 523 U.S. 303, 308, 315 (1998).

¶ 79. The defendant's fate in this case depended almost entirely on the jury's evaluation of Kayla's recantation. The outcome of the case turned on the believability of Kayla's prior out-of-court statement that the defendant had improperly touched her, which the jury had to reconcile against her in-court denial that any improper touching had occurred. The State introduced the testimony of two experts in an attempt to put the recantation issue into a "scientific" context: a social worker who testified about certain statistical

findings regarding recantation in child abuse cases, and the protective services investigator who had interviewed Kayla and who vouched for the reliability of the "cognitive graphic" interview technique he had used to interview the little girl.

¶ 80. The proposed defense expert, while not a specialist in the phenomenon of child abuse recantation, was a licensed physician with 33 years experience in psychiatry and neurology, including at least some experience treating victims of child abuse, mostly as adults. He was generally familiar with literature on sexual abuse, and had undertaken some study of the recantation issue in preparation for trial. Ninety percent of his clinical practice involved interviewing patients. He was to offer rebuttal testimony to the State's experts on the reliability of interview techniques and the limitations of statistical data on recantation.

¶ 81. Given the critical importance of the jury's evaluation of Kayla's out-of-court accusation vis-à-vis her in-court recantation, and because the State had introduced expert testimony on the subject, the circuit court's otherwise discretionary decision to exclude the proffered defense expert took on a constitutional dimension. If it were not so central to the defendant's case, the decision whether to qualify the defense expert under Wis. Stat. § 907.02 could have gone either way and been upheld. It was a close judgment call. The objections to the expert's qualifications could reasonably be characterized as going to the weight of his testimony and not its admissibility. With the constitutional thumb on the scales, I agree with the majority that it was an erroneous exercise of discretion to exclude his testimony.

¶ 82. The dissent seems to suggest that evidence deemed inadmissible by a circuit court applying the

rules of evidence is by definition irrelevant, and thus there can be no constitutional violation, because the right to present a defense does not include the right to present irrelevant evidence. Dissent at ¶¶ 86, 91. But evidence that is otherwise relevant and admissible is often excluded under the rules for reasons completely unrelated to considerations of actual factual relevancy—reasons usually related to reliability and fairness (e.g., hearsay, character evidence, evidence protected by privilege). That certain evidence is inadmissible by operation of the rules does not necessarily make it irrelevant.

¶ 83. Here, the defense expert's testimony was highly relevant to the jury's evaluation of the core proposition in the case—the believability of Kayla's out-of-court accusation in light of her in-court recantation of it—and it was offered in response to the State's explanatory expert testimony regarding that proposition. Without it, the State's experts went unrebutted—the exclusion of the defense expert occurred in the middle of the trial, and the defense request for a continuance to secure another expert was denied. Under these circumstances, the circuit court's evidentiary ruling excluding the defense expert's testimony under Wis. Stat. § 907.02 was an erroneous exercise of discretion because it infringed upon a fundamental element of the defense and therefore violated the defendant's right to present a defense. *See Rock,* 483 U.S. at 58, *Chambers,* 410 U.S. at 302–03, and *Washington,* 388 U.S. at 22–23.

¶ 84. I am not convinced, however, that the multifactor, *Pulizzano*-based inquiry must be undertaken any time a criminal defendant offers an expert witness. Not all defense experts can be said to implicate "weighty" interests of the accused or fundamental ele-

ments of the defense, and it is only when they do that scrutiny beyond the applicable evidentiary rule will be necessary. The standards articulated in Wis. Stat. § 907.02 are sufficient to accomplish the appropriate balancing of interests in the ordinary case. *See Scheffer,* 523 U.S. at 316 (a defendant is not deprived of his right to present a defense merely because a state or federal rule excludes evidence favorable to him.)

¶ 85. I would apply the test set forth in the majority opinion only when the proffered expert testimony is so clearly relevant to a central disputed issue in the case that its exclusion can reasonably be seen as implicating the constitutional right to present a defense. Where the proffered evidence is so centrally relevant, a constitutional question arises, and an evaluation of the relative necessity of the expert to the defendant's case as against the other interests at stake is appropriate in order to resolve it. Accordingly, I respectfully concur.

¶ 86. N. PATRICK CROOKS, J. *(dissenting).* I agree with the majority opinion on the first issue presented in this case—that the defendant was not denied his constitutional right to present evidence when the circuit court excluded evidence of the child victim's prior sexual contact with another child. I respectfully dissent, however, because on the second issue, the majority opinion ignores the rule that a defendant does not have a constitutional right to present irrelevant or otherwise inadmissible evidence. As the United States Supreme Court has stated, recently, the right to present evidence is subject to the rules of evidence, in order to ensure "that only reliable evidence is introduced at trial." *United States v. Scheffer,* 523 U.S. 303, 308–309 (1998). I would conclude, therefore, that the defendant was not

denied his constitutional right to present a defense when the circuit court exercised its discretion and excluded the testimony of the defendant's witness, Dr. Stonefeld.

¶ 87. The majority opinion reverses the court of appeals and, thus, also the circuit court's discretionary decision to exclude expert testimony from Dr. Stonefeld. The court of appeals' majority upheld the circuit court's discretionary decision because "the trial court used logical reasoning and based its decision on the facts in the record." *State v. St. George,* No. 00–2830–CR, unpublished slip op., ¶ 36 (Wis. Ct. App. June 5, 2001). In answering the constitutional questions, the majority seems to ignore the circuit court's bases for its decision to preclude the evidence. The circuit court relied on Wis. Stat. § 907.02, in determining that the testimony the defendant wished to offer from Dr. Stonefeld was inadmissible. The circuit court concluded that the evidence was not likely to help the jury arrive at a decision, since Dr. Stonefeld did not have the required experience or education on recantation and on the mechanics of interviewing in child sexual assault cases.

¶ 88. Unlike the majority, in answering the constitutional question of whether the evidentiary decision to exclude Dr. Stonefeld's testimony denied the defendant his constitutional right to present a defense, I would rely on the circuit court's discretionary decision, which had a reasonable basis in the record for its ruling. *See State v. Hammer,* 2000 WI 92, ¶¶ 43, 49, 236 Wis. 2d 686, 613 N.W.2d 629 (acknowledging that questions of constitutional significance are reviewed without deference to the circuit court, but answering the constitutional questions based on the circuit court's discretion-

ary evidentiary decisions);[1] *State v. Robinson,* 146 Wis. 2d 315, 330–332, 431 N.W.2d 165 (1988) (reviewing the circuit court's evidentiary decision under the abuse of discretion (now the erroneous exercise of discretion) standard, and then answering the constitutional question based on the upheld circuit court's evidentiary decision); *see also Grube v. Daun,* 213 Wis. 2d 533, 542, 570 N.W.2d 851 (1997) ("If a reasonable basis for the circuit court's ruling exists, we will not disturb it.").

¶ 89. It is well established that a defendant does not have the constitutional right to present any and all evidence in support of his claim. *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973); *Hammer,* 2000 WI 92, ¶ 42 ("[D]efendants cannot present irrelevant evidence."); *Robinson,* 146 Wis. 2d at 332; *State v. Johnson,* 118 Wis. 2d 472, 479, 348 N.W.2d 196 (1984) (the right to present relevant and competent evidence is the corollary to the right to present a defense). Furthermore, we have previously recognized that the circuit court is the proper arbiter of the admissibility of evidence, *see Grube,* 213 Wis. 2d at 542, and that this court reviews evidentiary decisions under an erroneous exercise of discretion standard. *Id.; Robinson,* 146 Wis. 2d at 332.

¶ 90. Although the majority opinion correctly notes that an evidentiary decision, including the admissibility of expert opinion testimony, is reviewed under the erroneous exercise of discretion standard, the majority opinion then fails to apply that standard here. *See*

---

[1] I disagree with the majority's characterization of *State v. Hammer,* 2000 WI 92, 236 Wis. 2d 686, 613 N.W.2d 629, and *State v. Walker,* 154 Wis. 2d 158, 453 N.W.2d 127 (1990), as "ignoring the usual standard of review that questions of constitutional fact are determined independently by this court." Majority op. at ¶ 16 n.17.

majority op. at ¶ 37. The majority skirts this standard by stating that in exercising its discretion to admit or exclude Dr. Stonefeld's testimony, the circuit court did not give consideration to whether exclusion of the testimony would deprive St. George of his right to present a defense. *Id.* at ¶ 48. In effect, the majority is asking circuit court judges no longer to base evidentiary decisions on the rules of evidence. Rather, the majority now requires circuit court judges to engage in nothing less than difficult mental gymnastics, in order to issue decisions on the admissibility of evidence. Wisconsin circuit court judges must now not only apply the rules of evidence, but then question whether the court should *actually apply* the rules of evidence to exclude otherwise inadmissible evidence in light of a defendant's constitutional right to present a defense. Here, the majority reasons that the circuit court should have exercised its discretion to admit the so-called expert testimony, rather than exclude it, on the basis that the defendant is denied his constitutional right to present a defense, even though when the rules of evidence were applied, the evidence was deemed to be inadmissible by the circuit court judge. Majority op. at ¶ 73.

¶ 91. The majority's complicated approach is not necessary, however, because a defendant does not have a right, constitutional or otherwise, to present irrelevant or otherwise inadmissible evidence. *State v. Walker,* 154 Wis. 2d 158, 192, 453 N.W.2d 127 (1990); *Robinson,* 146 Wis. 2d 332. The rules of evidence are not "arbitrary or disproportionate" where they are applied to exclude irrelevant or otherwise inadmissible evidence. *See Scheffer,* 523 U.S. at 308–309 (The right to present evidence is subject to the reasonable restrictions of evidentiary rules that serve legitimate interests, including "ensuring that only reliable evidence is

introduced at trial."); *see also United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982) (to establish a Sixth Amendment violation the defendant must prove the testimony would have been relevant, material, and vital to the defense). The majority opinion ignores the reality that St. George was not limited to the testimony of Dr. Stonefeld. St. George could have hired another expert witness, one with sufficient knowledge and experience on the issues relevant in this case.

¶ 92. Based on the circuit court's reasonable decision that Dr. Stonefeld's testimony was not likely to assist the jury, and that he did not have the specialized knowledge, skill, experience, training or education on the relevant topics, I would affirm the court of appeals' decision in full. The defendant was not deprived of his constitutional right to present a defense, because, as the court of appeals noted, he "do[es] not posses the constitutional right to present any and all evidence in support of a claim." *St. George,* No. 00–2830–CR, ¶ 35 (citing *Chambers,* 410 U.S. at 302); *see also Hammer,* 2000 WI 92, ¶ 42. I agree with the court of appeals that the circuit court properly exercised its discretion in concluding that Dr. Stonefeld's testimony did not meet the requirements of Wis. Stat. § 907.02. The defendant, therefore, is not deprived of any constitutional right by the circuit court's conclusion that he could not present evidence that does not meet the requirements of the evidence code for admissibility. I would come to the same conclusion as the circuit court and the court of appeals did in this case, therefore, I respectfully dissent.

¶ 93. I am authorized to state that Justice JON P. WILCOX joins this dissent.