STATE, Plaintiff-Respondent, v. WOLLMAN,
Defendant-Appellant.

Supreme Court

*No. 76–541–CR. Submitted on briefs November 29, 1978.—
Decided January 9, 1979.*
(Also reported in 273 N.W.2d 225.)

460

For the appellant the cause was submitted on the brief of *Thomas J. Balistreri* and *Shellow & Shellow* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

HEFFERNAN, J. The defendant, John J. Wollman, was tried by a jury and convicted of two counts of rape, contrary to sec. 944.01, Stats. The appeal is from an order which denied Wollman's motions for a new trial and postconviction relief.

This case arises out of the same events discussed in the case of a co-defendant, David Peter Medrano, decided by this court on June 30, 1978. *State v. Medrano,* 84 Wis.2d 11, 267 N.W.2d 586 (1978). Because the general background of facts is essentially the same as that set forth by the court in *Medrano,* we do not repeat in detail the chronology of the event. Suffice it to say that the charges against Wollman arose as a result of his alleged conduct at a "party" at a rural farmhouse in the vicinity of Plymouth, Wisconsin. Two young women who attended the party, Cynthia Miller and Diane Kenealy, reported to authorities that at the party they had been forced to engage in numerous acts of sexual intercourse and sexual perversion. Miller and Kenealy both identified Wollman, the defendant and appellant herein, as one of the men who forced them to have sexual intercourse. Wollman and five other men were charged with rape or abnormal acts of sexual gratification as a result of their conduct at the same party. All six defendants were tried together.

Two issues are raised by the appellant which we believe are appropriate for disposition on this appeal. Three additional issues are also asserted, but those were

decided in the court's opinion in *Medrano* and will not be discussed extensively herein.

The first issue is in respect to the admissibility of evidence that Kenealy saw a handgun on the person of Medrano *prior* to the time that Wollman allegedly raped her. It is also asserted that the denial of a continuance of trial requested by Wollman's counsel constituted an abuse of discretion, a denial of due process, and a denial of the effective assistance of counsel. We conclude that each of these issues, under the evidence, must be resolved against the appellant.

During the course of the trial, Kenealy testified that, after Medrano raped her, she saw him place what looked like a handgun in the belt of his pants. The fact that Medrano was carrying a weapon was corroborated because, when Medrano was arrested, he was carrying a pistol tucked in his pants. Medrano's possession of a firearm at the time the rapes took place is uncontested. Following Kenealy's rape by Medrano, Kenealy was raped by Wollman, the appellant in the instant appeal.

The original statement by Kenealy that she saw Medrano in possession of a handgun was not objected to. Subsequently, however, the count against Medrano for carrying a concealed weapon was severed and tried separately, but the court refused to instruct the jury to disregard the evidence in respect to the weapon. The trial judge's ruling followed arguments by the state that the fact that Kenealy believed that she had seen a weapon on Medrano's person was relevant to her state of mind at the time Wollman and others later came into the room and raped her. The state argued that this fact was probative of lack of consent. It should be pointed out that Wollman stated that Kenealy had offered to have intercourse with him. Hence, "consent" was an issue at trial.

Counsel for Wollman argued on the motion that the jury should be instructed to disregard the weapon testi-

mony, because there was no evidence to show that Wollman had any knowledge of the presence of the weapon. He asserted that the evidence of the presence of the gun would have a prejudicial effect on his client.

The chronology of the events is important. It is undisputed from the record that the rape of Kenealy by Medrano preceded the rape by Wollman. The state argued, although it never tied the presence of the gun to Kenealy's state of mind at the time of the Wollman rape, that it was reasonable to infer that, after seeing that one of the rapists was armed, it was less likely that she consented to the subsequent acts of intercourse, *i.e.*, that it was more likely that her will to resist was overborne by the knowledge that one of her rapists was armed with a deadly weapon.

We are satisfied that the evidence that Medrano was armed and that Kenealy knew this fact was relevant to Kenealy's state of mind when she was shortly thereafter raped by another male at the party. The evidence that one of the group members was armed had the tendency to make more probable a crucial element of the crime of rape—lack of consent. Sec. 904.01, Stats., defines relevant evidence:

"**904.01 Definition of 'relevant evidence.'** 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The fact, however, that the weapon evidence was relevant to the issue of consent does not necessarily mean that the trial judge should have admitted it into evidence and permitted the jury to consider it. Sec. 904.03 contemplates circumstances under which relevant evidence may be excluded. That section provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Whether such relevant evidence should be excluded therefore goes to the trial court's discretion to weigh the probative value of the evidence against the possibility of prejudice or other factors which might impede the orderly and expeditious disposition of the issues at trial. *Chapin v. State,* 78 Wis.2d 346, 353, 254 N.W.2d 286 (1977); *Kelly v. State,* 75 Wis.2d 303, 319, 249 N.W.2d 800 (1977).

The question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *McCleary v. State,* 49 Wis.2d 263, 182 N.W.2d 512 (1971). The test is not whether this court agrees with the ruling of the trial court, but whether appropriate discretion was in fact exercised.

In this case the court listened to arguments in respect to the relevance and probativeness of the evidence, as contrasted to the potential prejudice to the defendant. The trial court, after hearing arguments, concluded that the evidence was relevant and probative and that the arguments for the admission were not outweighed by the possibility of prejudice because, as the court stated, the "other alleged acts of intercourse . . . occurred subsequent to the viewing of that gun." This rationale was also explained in this court's opinion in *Medrano, supra* at 22:

"One of the reasons the trial court permitted the evidence of Medrano's gun to remain on the record after

the gun charge was severed was that Diane Kenealy testified that two of the defendants had sexual intercourse with her after she had seen Medrano put what looked like a gun in his waistband. According to the trial court, evidence of the gun was relevant to the charges against the two defendants who allegedly had intercourse with Kenealy after Medrano."

Although there was other evidence which tended to prove that neither Miller nor Kenealy had consented to the acts of intercourse and, therefore, the probative effect of the presence of the weapon was cumulative, we are satisfied that the trial judge correctly addressed the question of admissibility and, on the basis of the facts and the arguments presented at trial, reached the conclusion that the probative value of the evidence was not outweighed by the danger of unfair prejudice. We are satisfied that, in the exercise of discretion, the evidence of Medrano's possession of the gun was properly admissible in the case against Wollman.

Wollman also argues that the admission of the evidence that Medrano possessed a gun was ground for the severance of his case from Medrano's. In view of the relevance and probativeness of the gun testimony, we are satisfied that, even though severance had been granted, the gun evidence would properly have been admissible in the separate trial of Wollman.

It should be pointed out, moreover, that the argument for the severance of Medrano's case from that of the other five defendants was considered in *Medrano, supra* at 22. We therein accepted the trial court's position that the presence of the gun in Medrano's waistband was relevant to the charges against Wollman and another defendant. The gun evidence was relevant to the guilt or innocence of Wollman. We are satisfied that neither a severance nor special instructions which would

have limited the relevancy of the gun evidence to Medrano alone were appropriate under the circumstances. The evidence was properly admitted in the discretion of the trial court.

Additionally, Wollman asserts that he was denied due process and the right to effective counsel because the trial court denied his motion for a continuance of the trial. The record shows that Wollman was originally represented by Attorney William Burke. On March 21, 1975, ten days prior to the time the case was scheduled to be tried, the court granted Burke's request for leave to withdraw and appointed Attorney John N. Gunderson to represent Wollman. At that time the court advised Wollman that a substituted attorney might find it difficult to prepare an adequate defense in the ten days that remained before the scheduled commencement of trial. Despite that admonition, Wollman consented to the withdrawal of his previous counsel and accepted the substitution.

On March 28, 1975, the substituted attorney, Attorney Gunderson, asked for an additional adjournment of fifteen days. He asserted that he had not had sufficient time to prepare a defense. He acknowledged that he had received a list of witnesses from the state and from counsel for the other defendants, and admitted that he had reviewed the record in respect to his client and all the companion cases and had had several conferences with his client. He stated that he had been unable to interview one witness, but he acknowledged that co-counsel had interviewed that witness and conferred with co-counsel in respect to that witness. He additionally argued that he had had insufficient time to discuss the case with other co-counsel, that he planned to raise a defense inconsistent with that of other co-counsel, and that he believed that certain evidence existed which was exculpatory of Wollman.

The evidence adduced at this hearing indicated that Gunderson had the opportunity during the ten-day period to devote many hours to the preparation of Wollman's defense. There was also evidence that, at that late time, it would be prejudicial to the public's interest in the prompt and efficient administration of justice to delay the case. The prosecutor stated that it was believed that Wollman was a "leader and activist" in the criminal activities on the night in question. Additionally, the prosecutor offered to make immediately available to Gunderson any material he had, even including statements of witnesses that the court had not ordered to be delivered to the defense prior to trial.

After hearing arguments for the continuance, the court expressed its concern that the defendant be afforded a "substantial, good, solid, adequate defense." After discussing the arguments for and against continuance, the court concluded that it believed that such a defense could be afforded, particularly in view of the state's offer of "a wide open inspection of whatever the State has at this point short of the State work product, but inclusive of statements of any and all witnesses the State would intend to call at trial . . . ."

The court noted that Wollman had consented to the withdrawal of counsel, although the court had explained to him the problems that the substituted attorney might have. The court denied the motion for the continuance on the ground that adequate representation could be afforded without delaying the trial. Attorney Gunderson, however, was given leave to renew the motion at the commencement of the trial on March 31. At that time the motion for continuance was renewed. Both Gunderson and the prosecutor advised the trial court that, in the interim, they had conferred at length in respect to the witnesses that were to be offered in support of the state's case. The prosecutor asserted that

he had done his best to supply Attorney Gunderson with information in possession of the state, "so that he would at least be on a par with the other counsel . . . ."

The motion for continuance was again denied, and the case was tried on the scheduled date.

It is argued on this appeal that the trial court's denial of the mtoion for continuance was an abuse of discretion and denied Wollman the effective assistance of counsel. The decision to grant or deny a continuance is a matter within the discretion of the trial court. *State v. Davis,* 66 Wis.2d 636, 655, 225 N.W.2d 505 (1975). A denial of a continuance potentionally implicates the Sixth Amendment right to counsel and the Fourteenth Amendment right to due process of law. *Phifer v. State,* 64 Wis.2d 24, 218 N.W.2d 354 (1974); *Ungar v. Sarafite,* 376 U.S. 575 (1964); and *State v. Reppin,* 35 Wis.2d 377, 151 N.W.2d 9 (1967).

In determining whether a court has abused its discretion by the denial of a continuance, a single inquiry is to be made. This inquiry requires the balancing of the defendant's constitutional right to adequate representation by counsel against the public interest in the prompt and efficient administration of justice. As in all reviews of alleged abuse of trial court discretion, this balancing must be done in light of all the circumstances that appear of record. *Phifer, supra* at 31; *Ungar, supra* at 575; *Avery v. Alabama,* 308 U.S. 444, 446 (1940); *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640 (7th Cir. 1975); *United States v. Miller,* 508 F.2d 544, 452 (7th Cir. 1974); *United States v. Knight,* 443 F.2d 174 (6th Cir. 1971).

The United States Supreme Court in *Avery, supra* at 446, pointed out that the constitutional right to counsel includes the right to consultation between client and at-

torney and the opportunity for preparation for trial but also noted that the Constitution does not require any particular interval between the appointment of counsel and trial. The mere denial of a motion for continuance does not in itself deny the constitutional right to assistance of counsel. The determination of whether a continuance is to be granted lies within the discretion of the trial court, but an opportunity to confer, to consult, and to prepare for trial must be given. *Avery, supra* at 446.

*Ungar v. Sarafite, supra,* recognized that the discretionary right of a trial court to grant or deny a continuance was related to the question of due process. The court stated, however, at 589, "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process."

The Seventh Circuit in *Twomey, supra,* pointed out that the question is how well counsel in fact performed. That court in *Twomey, supra,* concluded that the test is whether the representation met the minimum professional standard. However, it has been held that merely because there is no showing of specific prejudice does not necessarily mean that effective assistance of counsel has not been denied. *United States v. Knight, supra.* The court in *Knight* attempted to draw a line between actual prejudice, which must be present to find a constitutional violation, and specific prejudice. In *Knight,* counsel was given but thirty minutes to prepare. He had no opportunity to interview witnesses or otherwise investigate the case and had to interview three co-defendants, all of whom were his clients, in the thirty-minute period. Although there was no proof of any specific prejudice or any showing that counsel might have done more had he been given additional time, the court found, in the circumstances, there was actual prejudice. The denial of the opportunity to prepare a defense was held

to be fundamentally unfair. The basic premise of *Knight* is that, if counsel is given virtually no time to prepare a defense, the defendant is not required to point to something specifically that counsel could have done for him but for the short time allotted for preparation.

The record in this case is devoid of either actual prejudice, in the sense that the time for preparation was fundamentally unfair, or of any specific prejudice, in the sense that the defendant was denied either due process or the effective right of counsel, because it would be reasonable to assume that more adequate preparation would have provided a more effective defense.

The appropriate test to be applied—the balancing of the defendant's right to adequate representation and the public interest in the prompt and efficient administration of justice—was adopted in *Phifer, supra* at 31, following guidelines set forth in *Giacalone v. Lucas,* 445 F.2d 1238, 1240 (6th Cir. 1971).

These factors include:

"1.  The length of the delay requested;
"2.  Whether the 'lead' counsel has associates prepared to try the case in his absence;
"3.  Whether other continuances had been requested and received by the defendant;
"4.  The convenience or inconvenience to the parties, witnesses and the court;
"5.  Whether the delay seems to be for legitimate reasons; or whether its purpose is dilatory;
"6.  Other relevant factors."

While the delay requested—fifteen days—was not inordinately long and there is no evidence which would indicate that the delay was for dilatory purposes, nevertheless, the other factors militate in favor of supporting the trial judge's discretion in denying the continuance. Other counsel for co-defendants were admittedly pre-

pared, and Wollman's counsel had ample opportunity to consult with them. In addition, the case involved six co-defendants and numerous witnesses. The request for a continuance was made only three days prior to the scheduled commencement of trial. It is apparent that a continuance at that late date would have materially disrupted and inconvenienced the court, the parties, and the witnesses who were scheduled to appear. Additionally, the fact that Wollman specifically consented to the withdrawal of his original attorney only ten days before trial, after he was told this would place a substantial burden on his new attorney, is highly relevant. Moreover, it was relevant that the prosecutor volunteered to make available to Attorney Gunderson full information in respect to the witnesses that the state intended to call. Additionally, in the ten days between the time of the original appointment and the commencement of the trial, the substituted counsel, Attorney Gunderson, devoted a substantial amount of time in preparation. He acknowledged that he completely reviewed the record in his client's case and the record in the five companion cases, and that he had an opportunity to hold an exhaustive conference with his client and several shorter ones. He received assistance from other defendants' counsel and conferred at length with the prosecutor.

We are not given any specific information in respect to the quality of Gunderson's performance at trial. The counsel on this appeal argues that the defense Gunderson was able to give Wollman "consisted essentially of simply joining the actions, objections and motions of attorneys for other defendants." However, these are the very motions and objections upon which appellate counsel bases his case. He apparently is of the opinion that the motions and objections made at trial were sufficient to protect Wollman in these appellate proceedings, and indeed they are. No argument posited by counsel on appeal has

been precluded because trial counsel failed to make appropriate motions.

Moreover, there is nothing in the record to show any conflict between the defense posed by Wollman at trial and the defense asserted by other defendants. It is not alleged that any exculpatory evidence was excluded by lack of preparation or that any defense inconsistent with that of the other defendants could have been offered had more time been afforded for preparation for trial.

At the time the continuance was denied, the trial court took into consideration that cases involving six defendants had been consolidated for trial. Had the continuance been granted, either the Wollman case would have to be severed from the others, which would have entailed the calling of the same set of witnesses on two occasions and would have resulted in the gross inefficiency of the administration of the court, or the other five cases would also have had to be continued just three days before trial, and this, as pointed out above, would have caused considerable inconvenience to the court, the witnesses, and the parties. Moreover, it was asserted by the prosecutor—and there is some evidence of record to support this assertion—that Wollman was a leader in the events leading to the alleged rapes. It was reasonable for the trial court to conclude that it would be prejudicial to the state's case and the interests of orderly administration of justice to have Wollman's case severed from the others.

In light of all the facts and circumstances, we conclude that the trial judge properly balanced the possible prejudice to the defendant against the clear prejudice to the administration of justice when he declined to continue the case. The trial court did not abuse its discretion by denying the requested continuance. Due process and effective assistance of counsel were not denied.

Additionally, the brief of Wollman raises three issues which we need not address in this case because they were disposed of under the same set of facts in *Medrano*.

It was asserted that the prosecutor's case against the defendant consisted in large part in cumulative second-hand repetitions of a complaining victim's statements. We held in *Medrano, supra* at 17–20, that such statements were not objectionable and, under the circumstances, were properly admitted.

It was also argued that:

"The defense was prejudiced beyond repair by hearsay testimony indicating that a woman who was neither a complainant nor witness in the case had undergone an abortion because of forced sexual relations at the farmhouse party."

We pointed out in *Medrano, supra* at 24–5, that the trial court correctly instructed the jury to disregard such testimony and that the evidence of such alleged abortion, although irrelevant, was not, in light of the trial court's instructions to disregard it, prejudicial to the defendant.

Wollman also claims error because he was denied the opportunity to impeach one of the rape victims because she had previously made false charges in respect to sexual misconduct. This, too, was discussed in *Medrano, supra* at 25–6. We said therein at 26:

"The trial court was correct in excluding evidence. Evidence of character of a victim is admissible only if it is evidence of a pertinent trait. Sec. 904.04(1)(b), Stats. Evidence that Kenealy fraudulently tried to obtain money from a former boyfriend five months prior to the party is not pertinent to whether she honestly accused Medrano of rape."

Each of these arguments was decided adversely to Medrano under the same facts and circumstances that control the instant case. In respect to these issues the same rationale applies to Wollman as it did to Medrano.

Accordingly, in respect to those issues, our decision in *Medrano* is controlling, and we find Wollman's assertion that these alleged errors constitute grounds for reversal are without merit.

We conclude that the evidence that Kenealy saw a weapon in the possession of a co-defendant prior to the time she was raped by Wollman was relevant and probative of her lack of consent, and the trial court in the exercise of discretion properly concluded that the admission of the evidence was not unfairly prejudicial and that limiting instructions were not required. We also conclude that the trial court's denial of the continuance was the product of appropriate discretion and did not result in a denial of due process or the right to effective assistance of counsel.

*By the Court.*—Order affirmed.