COURT OF APPEALS
DECISION
DATED AND FILED

September 7, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP606-FT**

STATE OF WISCONSIN

Cir. Ct. No.  2021ME497

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE CONDITION OF P.D.G.:

WINNEBAGO COUNTY,

　　PETITIONER-RESPONDENT,

　V.

P.D.G.,

　　RESPONDENT-APPELLANT.

　　　　　APPEAL from an order of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed.*

¶1     GUNDRUM, P.J.[1]  P.D.G. appeals from an order of the circuit court for involuntary commitment pursuant to WIS. STAT. ch. 51, and he also challenges an order for involuntary medication and treatment.[2]  He contends the circuit court erred in denying his motion to adjourn the final hearing on Winnebago County's petition for extension of his ch. 51 commitment and involuntary medication and treatment orders and that the County failed to present sufficient evidence at that hearing to establish that he is incompetent to make medication and treatment decisions.  For the following reasons, we disagree on both points and affirm.

### Background

¶2     On December 21, 2021, Winnebago County filed a petition under WIS. STAT. ch. 51 to extend orders for the commitment and involuntary medication and treatment of P.D.G.  The circuit court scheduled a final hearing on the petition for January 20, 2022.  On January 19, 2022, P.D.G.'s counsel requested an adjournment of the hearing due to the fact counsel had only received P.D.G.'s file on January 18, 2022, was not able to speak with P.D.G. until January 19, and "ha[d] not had time to adequately discuss [P.D.G.'s] rights with him."  At the scheduled final hearing on January 20, counsel for P.D.G. affirmed to the court that P.D.G. was still requesting an adjournment.  The court granted the adjournment, setting the final hearing for 3:15 p.m. on January 21, 2022.  Additionally, the court offered to counsel, "if you need some time to talk with

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Although P.D.G. challenges the circuit court order for involuntary medication and treatment, he does not address that order separately, and therefore, neither do we, except to note that our decision applies to that medication and treatment order as well.

your client today, we do have some conference rooms available, we can open up the jury room, too, if you need to meet with your client." When asked by the court if there was "anything further," the County indicated, "No, sir," and counsel for P.D.G. responded, "Nothing further, Your Honor."

¶3    At the start of the hearing on January 21, 2022, counsel for P.D.G. requested another adjournment, indicating "[t]here are 550 pages of discovery in this case that I've been working through since receiving them at 1:00 PM, obviously I haven't had time to do so, so I would just request the adjournment in order to feel that I would be an effective representative." The court denied the request, stating in part:

> I'll note … January 14th is when the order appointing counsel was signed.… [But] the recommitment proceedings started back in December and I don't know what the delay was in getting the public defender appointment here.
>
>   … [Counsel] is a staff counsel from the public defender's office so this wasn't a situation where they were trying to pursue obtaining private bar counsel to take the appointment, but it does appear there was some delay in regards to that appointment process. And I would note that I did adjourn it from yesterday. I do have a calendar that does not have time to adjourn it beyond today within that timeframe that the statute provides for in adjournments— up to seven days—so it was adjourned to today.
>
>   I believe there's an opportunity to adjourn one time under the statutes that talks about a postponement, which the Court did grant in this case, and I did allow for [counsel] to have time with his client yesterday here at the courthouse if necessary. And I would note that the appellate courts have also discussed the court's ability to manage their calendar in these types of proceedings.

The hearing proceeded, and the relevant evidence presented is as follows.

¶4	Doctor George Monese's unchallenged testimony was that he is a staff psychiatrist at the Wisconsin Resource Center, had been treating P.D.G. since his admission to the center from Dodge Correctional Institution in May 2019, and had most recently seen P.D.G. on December 15, 2021, and again on January 20, 2022. P.D.G. had also been seen periodically by residents Monese supervises who "discuss the case" with Monese. His evaluation of P.D.G. also was based upon his review of records, his own meetings with P.D.G., and "talking to the staff … [and] the rest of the other treatment team members which include the social worker, the psychologist, the nurses, [and] reviewing his medical records."

¶5	Monese opined that P.D.G. is schizophrenic and agreed that he has a "substantial disorder of … [t]hought, mood, and perception" as well as gross impairment of his judgment, behavior and "capacity to recognize reality." Monese confirmed that treatment, including psychotropic medication, has therapeutic benefit for P.D.G., and if treatment were withdrawn, he again would become a proper subject for commitment and treatment. He additionally noted that the medication would improve P.D.G.'s ability to prepare for court proceedings. Monese explained that P.D.G. is dangerous, specifically pointing out that in November and December 2021, he had "made threats to kill me and to kill his girlfriend," with the threat to Monese causing him to "fear for my life when I walk into work at [the] Resource Center." He explained that the threat to him was made in a handwritten letter from P.D.G. Monese tried to discuss the letter with P.D.G., but P.D.G. "refused to answer or respond." Monese added that "part of [P.D.G.'s] delusions and problematic thought problems [are that he] tends to make threats to others." Monese described P.D.G. as "violent" and "a dangerous man when he's off treatment."

¶6      Monese agreed that, due to P.D.G.'s mental illness, he is not competent to make medication or treatment decisions and that P.D.G. had "demonstrated a substantial probability that he needs care or treatment to prevent further disability or deterioration." When P.D.G. first arrived at the center, he exhibited "very severe thought problems. We analyzed him to take medication. He refused." Monese was able to treat P.D.G. because "[h]e was placed on Wis. Stat. Chapter 51 commitment at the time." P.D.G. "got better on the treatment" until P.D.G. "decided that he does not want the medication because it was causing him some side effects and so on." "At that time he wasn't on treatment so we were trying to work with him, but … when the medications were reduced then he decompensated and became more psychotic so we had [to] re-adjust the medication to … the higher doses. He would not take the medication without a medication order." When P.D.G.'s commitment could not be renewed due to "changes in the law in 2020," P.D.G. gradually decompensated:

> He began to talk about his being an Egyptian pharaoh, a black Egyptian, following the black Egyptian religion and therefore is not a subject to be treated with medications and he stopped the treatment. And then what happened he began to gradually deteriorate becoming more psychotic, making threats, including threats to me as well, and this led us to file a petition for Chapter 51 commitment on dangerousness. He had a jury trial for that and the jury found him incompetent … [and] in need of treatment and in need to stay on treatment.

Treatment was started and P.D.G. improved.

¶7      Recently, P.D.G. had been failing "to discuss in length the medication." P.D.G. failed to meet with one of the residents. P.D.G. also "doesn't want to be seen. He sleeps in bed. There is failure to discuss the treatment that we are giving him …. He has [also] failed to participate in psychosocial treatment that will allow him to gain a better insight into his illness." Monese agreed that

there is a substantial probability that "if left untreated [P.D.G.] would lack services necessary for his health or safety," specifically pointing out that P.D.G. identifies himself as "a black Egyptian pharaoh" who "does not accept … western medicine, per s[e]" and "will not accept treatment for the schizophrenia[,] which is medication, let alone the psychosocial interventions or treatments." Monese further agreed that there is a substantial probability that if left untreated, P.D.G. "would suffer severe mental, emotional, or physical harm resulting in the loss of his ability to function independently." Monese referred to "a clear manifestation of [P.D.G.'s] psychosis," that being that

> [p]rior to starting him on treatment, prior to being committed to Wisconsin Resource Center, he was in a segregation unit. He would refuse literally to come out of the seg unit .… He would not even come out of his cell and had to be physically extricated to be sent back to Wisconsin Resource Center, therefore [he] would not avail himself to those treatments and even now he still has demonstrat[ed] that while at the facility he would not avail himself to any treatment. He sleeps in his cell all day.

Monese indicated that P.D.G. "would not" avail himself of treatment if it was made available, "[b]ecause he doesn't believe that he needs treatment." Monese confirmed that he had talked with P.D.G. about "the advantages, disadvantages, and alternatives to accepting medications" and that P.D.G. was not competent to refuse medication.

¶8    When asked by the County to "cite one of the advantages" he had discussed with P.D.G., Monese responded that "[o]ne of the advantages that I tried to discuss with him yesterday was that the medications will improve his thought process, his thinking, and hopefully so that he can live a normal life in [the] Wisconsin Resource Center or anywhere else he goes within the prison system." When asked to describe "some or one of the disadvantages that was discussed"

with P.D.G., Monese responded that a "major one" is "sedation," but that "happens in starting the treatment." Monese indicated that he "tried to talk to [P.D.G.] about alternatives for treatment." Monese opined that P.D.G. was not able to express an understanding of the advantages, disadvantages, and alternatives to medication.

¶9    P.D.G. testified, very briefly, that he is "a black Egyptian," and as part of this religion, he is not allowed to take any western medicine.

¶10    In closing arguments, the County argued that it had met its burden to show the criteria for recommitment by clear and convincing evidence, specifically detailing the evidence from the hearing that supported the various criteria for recommitment and involuntary medication and treatment. Counsel for P.D.G. briefly asserted that the County "has not met its burden" but only questioned whether Monese really had "a reasonable fear … of serious physical harm" from P.D.G. in light of the fact Monese "returned to attempt to speak" with P.D.G. after P.D.G. had written the threatening letter.

¶11    The circuit court found that the County had met its burden with regard to all of the elements for extending the orders for commitment and involuntary medication and treatment. Specifically related to the medication order, the court found that Monese did advise P.D.G. "as to the advantages, disadvantages, and alternatives of the psychotropic medication and did provide some examples as to the advantages and disadvantages of that medication, that the medication would have a therapeutic value to it, and would not unreasonably impair [P.D.G.'s] ability to participate in future legal proceedings." The court also credited Monese's testimony that P.D.G. was "not competent with regards to refusing or accepting the medication and that he is substantially incapable of

7

applying the advantages, disadvantages, and alternatives to his condition in order to make an informed choice as to whether to accept or refuse the psychotropic medications."

¶12    P.D.G. appeals.

## *Discussion*

¶13    P.D.G. argues that the circuit court erred in denying his request to adjourn the final hearing a second time and that the County failed to prove with clear and convincing evidence that P.D.G. was incompetent to make decisions related to medication and treatment. We disagree with P.D.G. on both points.

### *Denial of Second Adjournment Request*

¶14    As P.D.G. acknowledges, the decision on whether to grant or deny an adjournment request is "a decision left to the circuit court's discretion." *Waukesha County v. E.J.W.*, 2021 WI 85, ¶34, 399 Wis. 2d 471, 966 N.W.2d 590. While P.D.G. raises most of his arguments related to this issue for the first time on appeal, we nonetheless will address the merits. *See Brooks v. Hayes*, 133 Wis. 2d 228, 241, 395 N.W.2d 167 (1986) ("The general rule is that this court will not consider arguments raised for the first time on appeal or review.").

¶15    In P.D.G.'s initial adjournment request, made in counsel's January 19 letter to the circuit court and at the originally scheduled final hearing on January 20, counsel did not suggest a specific adjournment duration he would need to sufficiently prepare for the hearing. Furthermore, when the court granted counsel's adjournment request at the January 20 hearing, adjourning the hearing to the following day, counsel gave no indication the additional day would be insufficient to prepare for the final hearing. And after setting the hearing to the

following day, when the court then asked the County and counsel if there was "anything further," counsel responded with "[n]othing further, Your Honor." Lastly, while P.D.G. now claims the court erred because it misread relevant statutes as affording it the authority to only adjourn the final hearing once and for no more than seven days, counsel for P.D.G. did not raise such an argument before the court on January 21, 2022. All that said, we will nonetheless address the merits of P.D.G.'s challenge to the court's denial of his second adjournment request.

¶16    Both parties point to *State v. Wollman*, 86 Wis. 2d 459, 273 N.W.2d 225 (1979), as establishing six factors a court considers in exercising its discretion when granting or denying an adjournment. Those factors are:

1.  The length of the delay requested;

2.  Whether the "lead" counsel has associates prepared to try the case in his absence;

3.  Whether other continuances had been requested and received by the defendant;

4.  The convenience or inconvenience to the parties, witnesses and the court;

5.  Whether the delay seems to be for legitimate reasons; or whether its purpose is dilatory;

6.  Other relevant factors.

*Id.* at 470 (citation omitted). Considering these factors, we conclude the circuit court did not erroneously exercise its discretion in denying P.D.G.'s motion to adjourn the final hearing a second time.

¶17    As to the first *Wollman* factor, counsel did not specify—in either his first or second request for an adjournment—any particular length of time P.D.G.

9

needed for the requested adjournment. It does not fall in a litigant's favor to seek an adjournment and not even identify the length of time being requested.

¶18 The second factor is not applicable here as counsel was not seeking an adjournment due to any "absence."

¶19 Related to the third factor, P.D.G. had already requested and received an adjournment just the previous day. When the court stated at that time that it was adjourning the case for one day, P.D.G. did not indicate that counsel would need additional time. P.D.G. asserted at the January 21, 2022 hearing and asserts in his brief-in-chief that a second adjournment was necessary because counsel had just received the County's "550 pages" of discovery two hours and fifteen minutes before the January 21, 2022 hearing. In its response brief, the County represents that the reason for this truncated time frame for reviewing discovery "was due to [counsel's] own delay in filing a discovery demand on the day … the final hearing" was originally scheduled, January 20, 2022. In his reply brief, P.D.G. does not dispute this representation by the County. Regardless, P.D.G. had already requested—and received—an adjournment just the previous day. This factor does not favor P.D.G.

¶20 Considering the fourth factor—"[t]he convenience or inconvenience to the parties, witnesses and the court"—unquestionably a second adjournment would have inconvenienced Monese, who was present and ready to testify as planned on January 21. *See* **Wollman**, 86 Wis. 2d at 470 (citation omitted). It necessarily would have also inconvenienced the court as well as counsel for the County, as both had obviously set aside time to participate in the final hearing on January 21—and January 20—and if the court further adjourned the hearing, they would have had to once again rearrange their schedules to accommodate the

hearing. Furthermore, and significantly, the court indicated its calendar "does not have time to adjourn it beyond today within that timeframe that the statute provides for in adjournments—up to seven days." While the record does not indicate precisely what matters filled the court's calendar for those six days, adjourning this evidentiary hearing, which had multiple witnesses scheduled to testify (Monese and P.D.G.), to a different date within the statutory time period would have most likely required parties, counsel, and possibly witnesses *in other cases* to be inconvenienced as they would have to be "bumped" from their own planned hearing time in order to make enough time for P.D.G.'s hearing within the remaining six calendar days. This factor, too, does not favor P.D.G.

¶21 The fifth factor inquires as to whether delay "seems to be for legitimate reasons; or whether its purpose is dilatory." *Wollman*, 86 Wis. 2d at 470 (citation omitted). The record provides us with no reason to conclude P.D.G. was requesting a second adjournment for illegitimate reasons—counsel was seeking more time to become better prepared for the hearing in light of receiving copious documents in a short timeframe. The County indicates, however, without refutation, that P.D.G. could have requested discovery from the County sooner than he did (just the day before, January 20), which may well have prevented any need for a second adjournment request. That said, because the reasons for seeking delay and the fact that P.D.G. himself appeared to do nothing that caused any potential need for a second adjournment, this factor supports a second adjournment.

¶22 The last consideration—"[o]ther relevant factors"—is really the kicker here. *See Wollman*, 86 Wis. 2d at 470 (citation omitted). As indicated, the court was faced with a statutory seven-calendar-day time limitation for holding the hearing after January 20. By January 21, this was down to six calendar days. This

11

was not the common scenario in which the hearing could be adjourned two months with no other litigants in other cases necessarily displaced and inconvenienced—the scenario created a significant bind for the court, one which does not arise in almost any other criminal or civil case context. This factor supports the court's denial of P.D.G.'s request for a second adjournment.[3]

¶23 "Wisconsin circuit courts have discretion to control their dockets." *Hefty v. Strickhouser*, 2008 WI 96, ¶31, 312 Wis. 2d 530, 752 N.W.2d 820. As indicated, here the circuit court was particularly crunched due to the statutory time limitation for holding the hearing. The court expressed that its docket "d[id]n't permit [the hearing] to be adjourned," and nothing in the record suggests to the contrary. Considering all of the above factors, we cannot conclude that the court erroneously exercised its discretion in denying P.D.G.'s request to adjourn the hearing a second time.

---

[3] WISCONSIN STAT. § 51.20(10)(e) provides: "At the request of the subject individual or his or her counsel the final hearing under par. (c) may be postponed, but in no case may the postponement exceed 7 calendar days from the date established by the court under this subsection for the final hearing." The circuit court appeared to read § 51.20(10)(e) as allowing for only one adjournment of the final hearing, which single adjournment was granted when the court adjourned the final hearing from January 20 to January 21. Without analysis of the actual statutory language, P.D.G. asserts this is erroneous and that § 51.20(10)(e) "does not limit a person to one adjournment." Because P.D.G. develops no argument in support of his assertion related to this statute, the County does not engage on this particular point, and resolution of it is not necessary to our decision, we do not definitively rule on the question. We do note, however, that it is understandable that the circuit court may have concluded the statute only affords one adjournment as it refers to "the postponement" as opposed to, for example, "any postponements."

P.D.G. also asserts that WIS. STAT. § 51.20(10)(e) "does not preclude the circuit court from adjourning a hearing for more than 7 days, *pursuant to stipulation*." (Emphasis added.) We also do not provide a definitive ruling on this issue as it is not developed by P.D.G., not engaged by the County, and not necessary to our decision. That said, there is reason to question P.D.G.'s reading of this statute as it plainly states that "in no case may the postponement exceed 7 calendar days from the date established by the court under this subsection for the final hearing." Sec. 51.20(1)(e) (emphasis added). The legislature's inclusion of "in no case" would appear on its face to preclude adjournment beyond seven days even in the case of stipulation.

*Sufficiency of the Evidence*

¶24    P.D.G. also contends "[t]he County's evidence was insufficient to prove that [P.D.G.] is incompetent to make medication or treatment decisions." We disagree.

¶25    As our supreme court has stated, an appellate court

> will not disturb a circuit court's factual findings unless they are clearly erroneous. We accept reasonable inferences from the facts available to the circuit court.
>
> In evaluating whether the County met its burden of proof, a court must apply facts to the statutory standard in WIS. STAT. § 51.61(1)(g)4.b. and interpret the statute. Applying facts to the standard and interpreting the statute are questions of law that this court reviews independently.

*Outagamie County v. Melanie L.*, 2013 WI 67, ¶¶38-39, 349 Wis. 2d 148, 833 N.W.2d 607 (citations omitted).

¶26    As relevant to this appeal, at a final hearing on a petition to extend orders for commitment and involuntary medication and treatment, the County must prove by clear and convincing evidence that, inter alia, the individual "is not competent to refuse medication or treatment." WIS. STAT. § 51.61(1)(g)3. For purposes of this determination, again as relevant to this case,

> an individual is not competent to refuse medication or treatment if, because of mental illness … and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual .…
>
> b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment.

13

Sec. 51.61(1)(g)4.

¶27　P.D.G. specifically claims the evidence at the final hearing was insufficient to meet the requirements of WIS. STAT. § 51.61(1)(g)4.b. "[b]ecause the County failed to establish the particular medication Monese prescribed and what [P.D.G.] understood" and "elicit Monese's full explanation of the unidentified medication's advantages, disadvantages, and alternatives," criticizing Monese for "testif[ying] to only one advantage and one disadvantage that he explained to [P.D.G.]"

¶28　To begin, P.D.G. cites to no case law indicating that evidence that an individual is "not competent to refuse medication or treatment" is insufficient simply because the testifying medical professional fails to identify during the final hearing the name of the particular medication prescribed to the committee. A reasonable inference from Monese's testimony is that there was *some* "particular medication" that was used for treating P.D.G. and that Monese discussed the advantages and disadvantages of it with P.D.G. and also tried to discuss alternatives with him. And based on his evaluation of P.D.G., Monese concluded that P.D.G. was not able to convey an understanding of the advantages, disadvantages, and alternatives to medication. Furthermore, according to Monese's testimony, P.D.G. "doesn't believe that he needs treatment" and simply will not accept treatment for his schizophrenia because he believes himself to be an "Egyptian pharaoh" and rejects "western medicine."

¶29　P.D.G. also fails to cite to any case law indicating that a description of a single advantage and single disadvantage of medication is insufficient. Here, Monese testified that he explained to P.D.G. that the medication would "improve his thought process, his thinking, and hopefully so that he can live a normal life in

[the] Wisconsin Resource Center or anywhere else he goes within the prison system." While this "advantage" could be characterized, as P.D.G. characterizes it, as being singular, it also could be fairly characterized as "advantages," plural. Obviously "improv[ing] his thought process, his thinking" would affect many different areas of his life in a positive way. To expect a witness to break down with a committee or on the witness stand multiple particular areas of the committee's life that could be advantaged by "improv[ing] his thought process" for the sole purpose of trying to make this into "advantages" as opposed to an "advantage" is unreasonable. As to "disadvantages," Monese testified that one of the "major" disadvantages that he discussed with P.D.G. was "sedation" but that that "happens in starting the treatment." Again, P.D.G. cites no case law suggesting this was insufficient, especially since Monese's testimony suggests that this was the only disadvantage of consequence for P.D.G. In the end, it did not matter because regardless of any advantages, disadvantages, or alternatives, P.D.G. was insistent on rejecting any and all "western medicine" and also "doesn't believe that he needs treatment."

¶30 For the foregoing reasons, we conclude the evidence presented at the final hearing was sufficient for the court to determine by clear and convincing evidence that P.D.G. was not competent to refuse medication and treatment.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.